**Leonard SANDERSON, Plaintiff–Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

No. 09CA1263.

Colorado Court of Appeals, Div. II.

Nov. 10, 2010.

---

The Kaudy Law Firm, L.L.C., Richard M. Kaudy, Nicole A. Spezia, Denver, Colorado, for Plaintiff–Appellant.

Sweetbaum, Levin & Sands, P.C., Jon F. Sands, Kimberle E. O'Brien, Denver, Colorado, for Defendant–Appellee.

Roberts Levin Rosenberg PC, Thomas L. Roberts, Michael J. Rosenberg, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association.

Opinion by Judge GABRIEL.

Plaintiff, Leonard Sanderson, appeals the district court's grant of summary judgment in favor of defendant, American Family Mutual Insurance Company (AFI), on his claim for bad faith breach of an underinsured motorist (UIM) policy. He also appeals the denial of leave to amend his complaint to assert a claim for exemplary damages based on the purported breach. Because we conclude that (1) Sanderson has failed to show a genuine issue of material fact and (2) on the facts presented here, AFI was entitled to judgment as a matter of law, we affirm.

## I. Background

On October 15, 2003, Sanderson was injured in an automobile accident with Kelly Pierce, who had bodily injury liability coverage of $25,000. Because Sanderson allegedly suffered injuries in excess of that amount, the accident implicated his UIM policy with AFI, which had a $100,000 policy limit.

Sanderson initially sued Pierce. After approximately one year of litigation, Sanderson settled with Pierce for her $25,000 policy limit. The settlement amount counted toward Sanderson's UIM coverage limit, thus leaving a UIM limit of $75,000. As a result of the settlement, neither liability nor the relative fault of the parties was determined.

Two days after Sanderson and Pierce filed a stipulated motion to dismiss based on their settlement, and twenty days before the court granted that stipulated motion and dismissed the case, Sanderson exercised his contractual right with AFI to demand arbitration to resolve a disagreement regarding either damages or the liability of the underinsured driver in the accident at issue. Specifically, Sanderson demanded that AFI enter into binding arbitration regarding his entitlement to the remaining $75,000 in UIM coverage, stating, without explanation, that his case was worth "well in excess" of the policy limit. He also demanded that AFI "set out [its] evaluation of the UIM case now" and threatened to sue for bad faith if he was successful in arbitration. AFI apparently responded to this demand two days later, but its response is not included in the record on appeal.

The record reflects that within days after Sanderson demanded arbitration, AFI had information regarding Sanderson's medical treatment history and claimed damages, as well as copies of various pleadings, disclosures, and depositions from Sanderson's lawsuit against Pierce. Thereafter, Sanderson and AFI undertook additional discovery, and Sanderson provided further information to substantiate his damages claims.

Sanderson then made a "final demand" that AFI pay the $75,000 UIM limit, stating that AFI had had "ample time to research and review" his medical records, and that his future pain management costs, conservatively

estimated by one of his experts to be over $250,000, far exceeded the policy limit. In light of this information, Sanderson claimed that AFI had no reasonable basis to value his case below the policy limit.

In response to Sanderson's demand, AFI made a counteroffer of $30,000. AFI asserted that (1) Sanderson had suffered no loss of past or present income as a result of the accident, (2) he had a preexisting degenerative neck condition, and (3) AFI had paid all of his medical expenses to date through his Personal Injury Protection (PIP) coverage and would pay his future medical expenses until five years after the date of the accident or the PIP policy limits were exhausted. Neither Sanderson's "final demand" nor AFI's counteroffer discussed whether Sanderson or Pierce was responsible, either in whole or part, for the accident.

The parties did not reach a settlement, and the matter proceeded to arbitration. After a two-day hearing, the arbitration panel awarded Sanderson $357,387.80 in damages. This award reflected an offset of the $25,000 settlement from Pierce, as well as the panel's finding that Sanderson was fifteen percent at fault for the accident. The panel, however, rejected AFI's contention that it was entitled to an offset for the PIP benefits that it had paid.

Within days of the panel's decision, AFI tendered the remaining $75,000 in insurance proceeds, plus $4,191.05 in arbitration costs and fees and prejudgment interest of eight percent per year from the date of the accident.

Sanderson then filed suit against AFI, alleging, among other things, that AFI had acted in bad faith by improperly handling his claim, thereby forcing him to endure arbitration and causing a delay in payment of the insurance proceeds. He later moved to amend his complaint to assert a claim for exemplary damages, but the district court denied that motion, concluding that Sanderson had failed to make a prima facie showing of his possible entitlement to such damages.

The district court ultimately granted summary judgment for AFI and against Sanderson. As pertinent here, the court held, as a matter of law, that (1) an insurer may properly challenge claims that are "fairly debatable"; (2) the claims at issue here were "fairly debatable" because there was a genuine issue of fact as to the parties' liability (i.e., the respective fault of Sanderson and Pierce) and a genuine issue of law as to the amount of payment owing under the policy (i.e., the PIP offset); and (3) the above-referenced factual and legal questions gave AFI a reasonable basis to delay payment of Sanderson's claim, thus rendering irrelevant any evidence concerning AFI's alleged bad faith in processing the claim.

Sanderson now appeals the district court's summary judgment for AFI and its denial of leave to amend his complaint to assert an exemplary damages claim.

## II. Standard of Review

Summary judgment is proper only when the pleadings and supporting documents clearly demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 240 (Colo.2009). In determining whether summary judgment is proper, we grant the nonmoving party any favorable inferences reasonably drawn from the evidence, and we resolve all doubts in favor of the nonmoving party. *Jenkins*, 208 P.3d at 241.

■ When, as here, a party moves for summary judgment on an issue on which that party would not bear the burden of persuasion at trial, the moving party's initial burden of production is satisfied by showing an absence of evidence in the record to support the nonmoving party's case. *Casey v. Christie Lodge Owners Ass'n*, 923 P.2d 365, 366 (Colo.App.1996). The burden then shifts to the nonmoving party to present sufficient evidence to demonstrate that a reasonable jury could return a verdict for the nonmoving party. *Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo.2007). If the nonmoving party fails to do so, then summary judgment may be entered in favor of the moving party. *Casey*, 923 P.2d at 366.

We review de novo an order granting summary judgment. *Jenkins*, 208 P.3d at 241.

### III.  Bad Faith Breach

Sanderson asserts that the district court applied the wrong legal standard here, because the court erroneously viewed the question of whether AFI's defenses were "fairly debatable" as the beginning and end of the court's inquiry, rather than just a part of the appropriate inquiry.  Sanderson further contends that the district court erred in holding, as a matter of law, that AFI's defenses as to liability and the PIP offsets demonstrated that it did not act in bad faith.  Finally, Sanderson argues that the district court erroneously concluded that because AFI's positions were "fairly debatable," its claim handling was irrelevant.

For the reasons set forth below, we agree with Sanderson that although fair debatability is part of the analysis of a bad faith claim, it is not necessarily sufficient, standing alone, to defeat such a claim.  Nonetheless, applying the appropriate standard here, we conclude that no reasonable jury could have found, on the evidence presented, that AFI acted in bad faith.

### A.  Legal Standard

With respect to Sanderson's contention that the district court erred in construing "fair debatability" as a dispositive standard, we agree.

■  In every insurance contract, there is an implied covenant of good faith and fair dealing. *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 556 (Colo.App.1998); *see also* § 10–1–101, C.R.S.2010 (declaring that persons providing insurance services to the public must "be at all times actuated by good faith").  This duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer, although the adversarial nature of such proceedings may suspend the insurer's obligation to negotiate as a reflection of good faith. *See Bucholtz v. Safeco Ins. Co.*, 773 P.2d 590, 592–93 (Colo. App.1988).

■  An insurer's breach of the implied duty of good faith and fair dealing may give rise not only to a breach of contract claim but also to tort liability. *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo.2004).  Such liability recognizes the special nature of insurance contacts, and particularly the disparity in bargaining power between the insurer and the insured. *See id.*  The basis for tort liability in this context is "the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability." *Id.*  Thus, the fact that an insurer eventually pays an insured's claim will not foreclose a lawsuit based on the insurer's conduct prior to payment.

■  When an insured sues his or her insurer for bad faith breach of an insurance contract, the insured must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim. *Id.* at 415.  The reasonableness of the insurer's conduct must be determined objectively. *Id.* Thus, if a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was "fairly debatable" (i.e., if reasonable minds could disagree as to the coverage-determining facts or law), then this weighs against a finding that the insurer acted unreasonably. *See Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).  This is true even if the insurer's defense ultimately proves to be unsuccessful, because resort to a judicial forum does not necessarily evince bad faith or unfair dealing, regardless of the outcome of the proceeding. *Brennan*, 961 P.2d at 557.  Thus, when an insurer maintains a mistaken belief that a claim is not compensable, it may still be within the scope of permissible challenge, even if the insurer's belief turns out to be incorrect. *Id.*

■  In light of the foregoing principles, we respectfully disagree with the district court's apparent conclusion that "fair debatability," without more, is necessarily sufficient to defeat a bad faith claim as a matter of law.  In this regard, we agree with the Arizona

Supreme Court's statement that "[w]hile it is clear that an insurer may defend a fairly debatable claim, all that means is that it may not defend one that is not fairly debatable. But in defending a fairly debatable claim, an insurer must exercise reasonable care and good faith." *Zilisch v. State Farm Mut. Auto. Ins. Co.,* 196 Ariz. 234, 995 P.2d 276, 279 (2000). Stated another way, fair debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case. *See id.* at 279–80.

We respectfully disagree with the district court's suggestion that the division's analysis in *Brennan,* 961 P.2d at 556–57, holds otherwise. In *Brennan,* the division began its analysis by reciting the same general principles governing bad faith claims that we are applying here. *Id.* at 556. Moreover, although the division in *Brennan* noted that an insurer may challenge claims that are fairly debatable, it went on to state that if an insurer proceeds under a mistaken belief that the claim is not compensable, it *may* be within the scope of permissible challenge. *Id.* at 557. Thus, we perceive nothing in *Brennan* to suggest that "fair debatability" alone defeats a bad faith claim as a matter of law.

Having thus clarified the governing legal standard, we proceed to assess Sanderson's remaining arguments under that standard.

B. Liability for the Underlying Accident

■ Sanderson appears to contend that the district court erred in holding, as a matter of law, that AFI's defense as to liability was not brought in bad faith. We are not persuaded.

Under the terms of the UIM policy at issue, AFI was required to pay for bodily injury caused by Pierce, up to the $75,000 policy limit that remained after the above-described $25,000 settlement offset. In the district court, AFI argued that it had a good faith basis to dispute the amount owed under the policy because liability for the underlying accident (i.e., the relative fault of Sanderson and Pierce) was at issue. The relative fault of the parties was important because if the

arbitration panel allocated fault of fifty percent or more to Sanderson, then AFI would not have been obligated to pay Sanderson anything under the policy. *See* § 13–21–111(1), C.R.S.2010 (providing that contributory negligence shall not bar recovery in a personal injury action if such negligence was not as great as the negligence of the person against whom recovery is sought); *Gordon v. Benson,* 925 P.2d 775, 777 (Colo.1996) (same). If the arbitration panel allocated anything less, then depending on the damages, if any, ultimately found by the panel, the amount that AFI would have been required to pay Sanderson could have been less than the UIM limit. *See* § 13–21–111(1), C.R.S.2010 (if comparative fault is found, any damages allowed are diminished in proportion to the amount of negligence attributable to the person for whose injury recovery is made).

In opposing summary judgment, Sanderson presented no evidence to suggest that AFI had contested liability in bad faith or without any reasonable basis for doing so. Instead, he focused on the issue of damages.

■ In these circumstances, we agree with the district court's determination that no reasonable jury could have found that AFI contested liability in bad faith. In reaching this conclusion, we do not address Sanderson's argument that comparative fault was a nonissue in this case because Pierce effectively admitted fault by settling for her policy limits. Sanderson never raised this argument in the district court, and we will not consider it here. *See O'Connell v. Biomet, Inc.,* 250 P.3d 1278, 1282 (Colo.App.2010) ("Arguments never presented to, considered by, or ruled upon by a trial court may not be raised for the first time on appeal.").

C. PIP Offset

■ We likewise reject Sanderson's assertion that the district court erred in concluding, as a matter of law, that AFI's PIP offset defense was not brought in bad faith.

In the district court, AFI argued that the PIP benefits that it had paid and was continuing to pay would, as a matter of law, need to be deducted from its liability, if any, for economic damages that would otherwise

fall under any UIM coverage. AFI further asserted that this offset would have eliminated or reduced below the UIM policy limits any obligation of AFI to pay UIM benefits to Sanderson.

In response, Sanderson did not contend that AFI's argument lacked a reasonable basis in law. Instead, he argued that any such offset would be statutorily limited to $100,000. Sanderson renews that argument here and further suggests that a genuine issue of material fact existed as to AFI's bad faith because Sanderson's medical expenses and noneconomic damages far exceeded his UIM limit, even after discounting for the purported $100,000 statutory PIP offset. Sanderson posits that this evidence should have made clear to AFI that this was a policy limits case. For several reasons, we are not persuaded.

First, assuming without deciding that Sanderson preserved this argument, his argument fails because it is based on an incorrect legal premise. Specifically, in contending that the statutory PIP offset limit was $100,000, Sanderson relies on various provisions of Colorado's former No–Fault Act (formerly codified, as amended, at §§ 10–4–701 to –725, repealed effective July 1, 2003, ch. 189, sec. 1, § 10–4–726, 2002 Colo. Sess. Laws 649). These provisions, however, were repealed effective months before the accident at issue, and thus, they are inapplicable here. *See Miller v. Brannon*, 207 P.3d 923, 930 (Colo.App.2009) (noting that a party could not assert rights under former section 10–4–713 after its repeal on July 1, 2003). Consequently, there is no basis in the record to allow us to conclude that a reasonable jury could have found that AFI pursued its PIP offset defense in bad faith.

Second, we reject Sanderson's assertion that because the arbitration panel ultimately awarded him noneconomic damages of $150,000, AFI knew or should have known that this was a policy limits case, regardless of any PIP offset. Sanderson's assertion in this regard amounts to nothing more than a conclusory allegation, made with the benefit of twenty-twenty hindsight. Such allegations, however, are insufficient, in and of themselves, to defeat summary judgment.

*See Keith v. Kinney*, 140 P.3d 141, 153 (Colo. App.2005) ("Mere allegations or conclusions are insufficient to create a factual issue.").

### D. The Insurer's Claim Handling

Sanderson next contends that even if AFI had a good faith basis for challenging liability and pursuing its PIP offset argument, a reasonable jury still could have concluded that AFI acted in bad faith because AFI failed to follow industry standards. Specifically, Sanderson points to the evidence presented in his experts' reports, which tended to show, among other things, that AFI had improperly (1) failed to follow prevailing industry investigation standards; (2) substituted the nonmedical opinions of its claims attorney and claims adjuster for those of Sanderson's doctors; (3) failed to explain why Sanderson's claim was being delayed and denied; and (4) made a low settlement offer of $30,000, never explained the basis for that offer, and stubbornly refused to move from that offer. In the circumstances presented here, we are not persuaded that this evidence was sufficient to establish a genuine issue of material fact.

As an initial matter, we agree with Sanderson that the district court erred in holding that because the liability and PIP offset issues were fairly debatable, AFI's conduct in processing his claim was irrelevant as a matter of law. As noted above,

> while fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition. The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.

*Zilisch*, 995 P.2d at 280.

Although the district court relied on *Brennan*, 961 P.2d at 556, in support of its conclusion that AFI's claim processing was irrelevant, *Brennan* is distinguishable. In *Brennan*, it was undisputed that the policy at issue, on its face, did not provide coverage. The trial court, however, reformed that

policy, and the policy, as reformed, did provide coverage. *Id.* at 552. It is these unique circumstances that led the division to note that the adjuster's actions in the case before it were irrelevant. *Id.* at 556. Simply stated, prior to the reformation of the contract, there was no basis for the adjuster to perform any investigation, because there indisputably was no coverage. *Id.* Those, however, are not the facts in the present case.

Accordingly, we must proceed to determine whether a reasonable jury could have determined that AFI acted unreasonably and knew it, notwithstanding its above-described defenses. For several reasons, in the circumstances presented here, we conclude that the district court correctly entered judgment as a matter of law for AFI.

■ First, we note that AFI's conduct prior to the resolution of Sanderson's lawsuit against Pierce does not create a genuine issue of material fact. According to Sanderson's policy, UIM protection was only available "a[f]ter the limits of liability under any bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." In addition, in *Freeman v. State Farm Mutual Automobile Insurance Co.*, 946 P.2d 584, 585–86 (Colo.App.1997), a division of this court, construing virtually identical contractual language, affirmed a district court's ruling requiring an insured to pursue his claims against the underinsured driver before asserting a claim for UIM benefits against his own insurer. Accordingly, Sanderson's claim for UIM benefits, and any bad faith claim arising from a delay in the payment of those benefits, could not have accrued until his lawsuit against Pierce was resolved. *See Cork v. Sentry Ins.*, 194 P.3d 422, 428 (Colo.App.2008) ("Until an insured recovers from the tortfeasor, the insurer cannot know the amount of UIM benefits potentially due to its insured. Thus, a bad faith claim for nonpayment of UIM benefits cannot accrue until the insured has obtained a judgment against or, as here, settled with the underinsured driver.") (citation omitted).

Second, virtually all of the evidence on which Sanderson relies in arguing that genuine issues of material fact precluded summary judgment pertained to potential disputes as to AFI's valuation of Sanderson's claim. None of this evidence, however, called into question AFI's analysis of the liability and PIP offset issues discussed above.

■ Nor does Sanderson explain how AFI's allegedly poor investigation would have altered its analysis of the liability and PIP offset issues. Although there may be instances in which a poor investigation might preclude an insurer from obtaining summary judgment on the basis of an allegedly viable defense (e.g., where a proper investigation might have revealed that the insurer's superficially viable defense would not succeed), this is not such a case. Here, although Sanderson arguably presented evidence to call into question AFI's evaluation of the amount of its potential liability, he offered no evidence to question the good faith of AFI's liability and PIP offset defenses, which, if successful, could have absolved AFI from liability altogether. In these circumstances, we conclude, as a matter of law, that AFI was entitled to pursue its defenses to liability.

Third, Sanderson contends that AFI's failure to inform him of its basis for contesting liability for the underlying accident and the fact that it did not assert the liability dispute as a basis for denying his claim until long after the fact demonstrate AFI's bad faith. The record, however, clearly shows that Sanderson was well aware that AFI was contesting liability throughout the arbitration, culminating in a fifteen percent allocation of fault to him. Moreover, Sanderson had ample opportunity in the arbitration proceeding to explore AFI's legal and factual theories of defense.

■ Fourth, with respect to AFI's $30,000 settlement offer, we note that this offer was made in response to Sanderson's demand for the remaining $75,000 policy limit. Moreover, it was made in the context of an adversarial arbitration in which AFI was asserting multiple defenses that, if successful, could have reduced its liability to $30,000, if not entirely. Again, in these circumstances, absent any other evidence, we con-

clude that no reasonable jury could have found that AFI's offer was so low as to reflect an intention to force Sanderson to continue to litigate, in the hopes of extracting a favorable settlement from him.

 Finally, with respect to Sanderson's argument that AFI's failure to explain its $30,000 offer showed bad faith, as noted above, AFI had no duty to negotiate at all during the arbitration. *See Bucholtz,* 773 P.2d at 592–93. Accordingly, we question the basis for Sanderson's argument that AFI had a duty to explain an offer that it voluntarily chose to make. In any event, contrary to Sanderson's assertions, AFI did explain its offer, referencing the PIP offset issue, Sanderson's pre-existing degenerative neck condition, and the lack of damages for any loss of past or present income. The fact that Sanderson did not agree with this explanation does not support a bad faith claim.

For these reasons, on the facts presented here, we conclude that Sanderson failed to show that a reasonable jury could have found that AFI acted in bad faith.

## IV. Leave to Amend

Finally, Sanderson contends that the district court abused its discretion in denying him leave to amend his complaint to add a claim for exemplary damages. In light of our foregoing disposition, we conclude that this issue is moot. *See Kirk v. Denver Publ'g Co.,* 818 P.2d 262, 265 (Colo.1991) ("[A] claim for exemplary damages is not 'a separate and distinct cause of action,' but rather 'is auxiliary to an underlying claim for actual damages' and thus can be entered only in conjunction with an underlying and successful claim for actual damages assessed against a wrongdoer for a legal wrong to the injured party.") (quoting *Palmer v. A.H. Robins Co.,* 684 P.2d 187, 213–14 (Colo. 1984)).

## V. Conclusion

For these reasons, the trial court properly granted AFI's motion for summary judgment on Sanderson's bad faith claim and denied Sanderson leave to amend.

The judgment is affirmed.

Judge ROY and Judge HAWTHORNE concur.