2012 COA 9

**Charles M. VACCARO, Plaintiff–Appellee,**

v.

**AMERICAN FAMILY INSURANCE GROUP, Defendant–Appellant.**

**No. 10CA2590.**

Colorado Court of Appeals, Div. II.

Jan. 19, 2012.

As Modified on Denial of Rehearing March 15, 2012.

Irwin & Boesen, P.C., Steven R. Barrett, Andrea L. Blanscet, Denver, Colorado, for Plaintiff–Appellee.

Sweetbaum Sands Anderson PC, Jon F. Sands, Kimberle E. O'Brien, William B. Stanton, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

¶ 1 In this dispute over underinsured motorist (UIM) insurance benefits, defendant, American Family Insurance Group, appeals the judgment entered on a jury verdict in favor of plaintiff, Charles M. Vaccaro, for breach of contract and for unreasonable denial of insurance benefits under sections 10–3–1115 and 10–3–1116, C.R.S.2011 (the Statutes). Defendant asserts the trial court erred in applying the Statutes to a claim arising before their effective date, by sustaining a jury verdict based on insufficient evidence, and by awarding prejudgment interest in excess of defendant's policy limit. We affirm the judgment, vacate the interest award, and remand with directions.

## I. Background

¶ 2 A negligent tortfeasor injured plaintiff in a two-car accident in 2005. The tortfeasor had liability insurance with policy limits of $25,000. Defendant's policy insuring plaintiff provided UIM coverage up to $100,000. Plaintiff settled his claim against the at-fault driver for the policy limit of $25,000.

¶ 3 In 2007, plaintiff submitted a claim to defendant seeking $75,000 in UIM benefits, the amount remaining available under his UIM policy. Defendant reviewed plaintiff's medical records and initially valued plaintiff's

claim between $21,000 and $25,000, offset entirely by the amount he had recovered from the tortfeasor. On January 2, 2008, defendant offered to settle plaintiff's UIM claim for $2,500. Following a request to reconsider from plaintiff's counsel, defendant increased its valuation to between $26,000 and $30,000 and extended a "full and final" settlement offer of $5,000 on January 30, 2008. Plaintiff rejected the settlement offer.

¶ 4 In June 2008, plaintiff's counsel requested defendant to consider permanent impairment and disfigurement in its valuation of plaintiff's claim. Defendant responded that it had no proof of permanency and would need the evaluation of a medical provider documenting plaintiff's injuries and level of impairment. Plaintiff's counsel then arranged an independent medical evaluation (IME) by Steven Nadler, M.D., an orthopedic surgeon.

¶ 5 Dr. Nadler examined plaintiff on August 12, 2008, and submitted a report, which defendant received on September 22, 2008. Among other things, the report concluded that plaintiff suffered from facet joint injuries to his cervical spine, impingement syndrome in his right shoulder, and residual tendonitis in his right forearm following carpal tunnel release surgery. Dr. Nadler opined that all these injuries were causally related to the accident, and that approximately $27,000 in medical treatment that plaintiff had received to date had been medically necessary. Dr. Nadler also recommended additional treatment, including pain management at $200 per month for the rest of plaintiff's life; spinal injections costing $7,000 to $10,000; radiofrequency rhizotomy procedures at $16,548 each every 422 days for the rest of plaintiff's life; and arthroscopic shoulder surgery estimated to cost $26,784. Defendant reviewed and considered the IME report but declined to reassess its settlement offer.

¶ 6 Plaintiff commenced this action on May 26, 2009, alleging that defendant had breached the insurance contract and had unreasonably denied payment of insurance benefits in violation of the Statutes. As pertinent here, section 10–3–1115(1)(a), C.R.S.2011, provides that a "person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Section 10–3–1116(1), C.R.S.2011, provides that a "first-party claimant ... whose claim for payment of benefits has been unreasonably delayed or denied may bring an action ... to recover reasonable attorney fees and court costs and two times the covered benefit." The Statutes became effective August 5, 2008.

¶ 7 During trial, the court denied plaintiff's motion to amend his complaint to assert a "common law" claim for bad faith breach of insurance contract, observing that common law bad faith and the statutory penalty under the Statutes involve "different standards" and are not interchangeable. The court also denied defendant's motion for a directed verdict, rejecting its contention that the Statutes could not be applied retroactively to a claim arising before their effective date. The court concluded:

> [T]here is evidence of information being provided to the insurance company subsequent to the passage of the statute that would permit a jury to find that the defendant had violated that statute. Although the Court acknowledges the difficulty in sort of submitting this, in that the statute is certainly not intended to be applied retroactively, nor is it constitutionally permissible to apply it retroactively, the Court does not find in this case that new information was provided for the purposes of re-triggering the statute or triggering the statute for that matter. Were that the case, the Court may agree with [defense counsel] in his argument that it's unfair to apply it retroactively. Certainly, in some cases it would be unfair to apply the statute if someone essentially makes a phone call to the insurance company and says, "Hey, do you want to reconsider your decision?" Here, this was additional information provided in some—there is some indication it may have been at the request of the insurance company. And, again, all this is subject to disputed issues of fact. The Court will allow that claim to go to the jury.

¶ 8 The court instructed the jury to limit its consideration of the statutory claim to conduct occurring after August 5, 2008, and the verdict form for that claim repeated this limiting instruction.

¶ 9 Following trial, the jury returned a verdict for plaintiff, awarding him $75,000 on the contract claim, and $75,000, which the trial court doubled to $150,000, for unreasonable denial of insurance benefits after August 5, 2008. The propriety of the court's doubling is not at issue in this appeal.

¶ 10 Defendant moved for a new trial and for judgment notwithstanding the verdict (JNOV), asserting that it was error to submit plaintiff's statutory claim to the jury, and challenging the sufficiency of the evidence related to the reasonableness of its actions. The court denied both motions, stating that "[t]he statutory claim was properly submitted to the jury and [it was] instructed to apply it prospectively; jurors are expected to follow the Court's instructions." The court also found the evidence sufficient to support the jury's verdict on the statutory claim.

¶ 11 Plaintiff initially requested $69,325 in prejudgment interest, based on both the contract and statutory claims. Defendant disputed that plaintiff was entitled to prejudgment interest on the statutory claim but stated that "[i]t appears that plaintiff has applied the correct calculation of the right to prejudgment interest on the UIM benefit award of $75,000." Three days later, however, defendant filed a "Corrected Response," arguing that plaintiff was not entitled to any prejudgment interest because the jury had already awarded him the policy limit of $75,000 in damages, and defendant was not responsible for prejudgment interest in excess of that limit.

¶ 12 The court awarded prejudgment interest to plaintiff on the contract claim only, observing that the statutory claim was "inherently punitive and not remedial," and thus any amount awarded was not subject to assessment of interest. The court rejected defendant's assertion that USAA v. Parker, 200 P.3d 350 (Colo.2009), controlled this issue, stating that the award was properly calculated pursuant to the "personal injury statute," section 13–21–101(1), C.R.S.2011.

¶ 13 After adding $14,907 in costs, $52,830 in attorney fees, and $40,539 in prejudgment interest to the damages awarded by the jury, the court entered judgment against defendant for $333,276. This appeal followed.

## II. Statutory Claim

¶ 14 Defendant asserts that the trial court's submission of plaintiff's statutory claim to the jury was an unconstitutional retroactive application of the Statutes. It argues that because plaintiff's injuries and demand for UIM benefits occurred before August 5, 2008, the jury was required to apply the statutes to a continuing course of conduct that began before the effective date of the Statutes. On the facts of this case, we are not persuaded that the Statutes were applied retroactively. We also conclude that the trial court did not err by instructing the jury to consider plaintiff's statutory claim with respect to conduct arising after August 5, 2008.

### A. Standard of Review

¶ 15 Construction of a statute presents a question of law, Fogg v. Macaluso, 892 P.2d 271, 273 (Colo.1995), which we review de novo.

¶ 16 We also review de novo whether a statute has been applied in violation of retroactivity principles, see Specialty Restaurants Corp. v. Nelson, 231 P.3d 393, 399 (Colo.2010), as well as whether a court has erroneously granted or denied a motion for JNOV. Cardenas v. Fin. Indem. Co., 254 P.3d 1164, 1167 (Colo.App.2011).

### B. Law

¶ 17 The Colorado Constitution prohibits the enactment of any law that is "retrospective in its operation." Colo. Const. art. II, § 11. A statute is retrospective if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." In re Estate of DeWitt, 54 P.3d 849, 854 (Colo.2002) (quoting Denver S. Park & Pac. Ry. Co. v. Woodward,

4 Colo. 162, 167 (1878)). This proscription is intended to prevent the unfairness that would otherwise result from changing the consequences of an act after that act has occurred. *Van Sickle v. Boyes,* 797 P.2d 1267, 1271 (Colo.1990).

¶ 18 Absent legislative intent to the contrary, a statute is presumed to operate prospectively, meaning it operates on transactions occurring after its effective date. *DeWitt,* 54 P.3d at 854. The application of a statute is not rendered retrospective "merely because the facts upon which it operates occurred before the adoption of the statute." *Id.* at 855 (quoting *City of Greenwood Village v. Petitioners for Proposed City of Centennial,* 3 P.3d 427, 445 (Colo.2000)).

¶ 19 The General Assembly enacted the Statutes in House Bill 08–1407, titled "An Act Concerning Strengthening Penalties for the Unreasonable Conduct of an Insurance Carrier." Ch. 422, 2008 Colo. Sess. Laws 2171. Both sections took effect on August 5, 2008.

¶ 20 The civil action authorized by the Statutes "is in addition to, and does not limit or affect, other actions available by statute or common law." § 10–3–1116(4), C.R.S.2011; *see also* § 10–3–1114, C.R.S.2011 ("Except as provided in sections 10–3–1115 and 10–3–1116, nothing in this part 11 shall be construed to create a private cause of action based on alleged violations of this part 11 or to abrogate any common law contract or tort cause of action.").

¶ 21 Accordingly, the Statutes create a right of action separate from the common law tort of bad faith breach of an insurance contract. *Kisselman v. Am. Family Mut. Ins. Co.,* —— P.3d ——, ——, 2011 WL 6091708 (Colo.App.2011). While first-party bad faith principles require a plaintiff to establish that the insurer knew or recklessly disregarded the fact that its conduct was unreasonable, *see* § 10–3–1113(3), C.R.S.2011; *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1272 (Colo. 1985), the statutory claim requires only that a first-party claim be denied without a reasonable basis. Thus, "[t]he standard contained in § 1115 arguably is less onerous on the insured, and the remedies contained in

§ 1116 are more financially threatening to the insurer than a traditional common law bad faith claim." Erin Robson Kristofco, *CRS §§ 10–3–1115 and –1116: Providing Remedies to First–Party Claimants,* 39 Colo. Law. 69, 70 (July 2010).

¶ 22 In the common law context, bad faith may encompass an entire course of conduct and can be cumulative. *Dale v. Guar. Nat'l Ins. Co.,* 948 P.2d 545, 551 (Colo. 1997); *see also Bankr. Estate of Morris v. COPIC Ins. Co.,* 192 P.3d 519, 524 (Colo.App. 2008) ("[T]he tort of bad faith breach of an insurance contract encompasses all of the dealings between the parties, including conduct occurring before, during, and after trial.").

¶ 23 A bad faith claim accrues when both the nature of the injury and its causes are known or should be known through the exercise of reasonable diligence. *Cork v. Sentry Ins.,* 194 P.3d 422, 427 (Colo.App. 2008) (citing § 13–80–108(1), C.R.S.2011). However, "[e]ach bad faith act constitutes a separate and distinct tortious act, on which the statute of limitation begins to run anew when the plaintiff becomes aware of the injury and its cause." *Cork,* 194 P.3d at 427.

¶ 24 Some federal courts have applied common law principles to hold that the Statutes do not apply retroactively to events occurring before August 5, 2008, or to continuing conduct that began before that date. *See James River Ins. Co. v. Rapid Funding, LLC,* 07–CV01146, 2009 WL 524994 (D.Colo. Mar.2, 2009) (unpublished order regarding summary judgment); *New Salida Ditch Co. v. United Fire & Cas. Ins. Co.,* 08–CV–00391, 2009 WL 5126498 (D.Colo. Dec.18, 2009) (unpublished memorandum opinion and order), *aff'd,* 400 Fed.Appx. 338 (10th Cir.2010). In *New Salida Ditch Co.,* the court observed that "[a]n insurer's continued refusal to cooperate with an insured cannot serve as the basis for a separate bad faith claim; if the ongoing conduct can be traced back to the initial decision to deny coverage, no additional claims result." 2009 WL 5126498, at *4.

¶ 25 Other federal courts, however, have acknowledged that the Statutes may properly apply to new acts of unreasonable denial or

delay occurring after the effective date of the Statutes, even where the underlying insurance claim arose prior to their enactment. *See Cunningham v. Standard Fire Ins. Co.*, 07–CV–02538, 2008 WL 4861928 (D.Colo. Nov.10, 2008) (unpublished magistrate order); *Morrissey v. Allstate Ins. Co.*, 08–CV–02174, 2009 WL 1384099 (D.Colo. May 14, 2009) (unpublished order). This federal authority suggests that, although the Statutes may not operate retroactively, they may be applied prospectively under appropriate circumstances to claims originating before August 5, 2008, when it is possible to identify unreasonable acts occurring after that date.

¶ 26 A division of this court reached a similar conclusion in *Kisselman*, reversing a trial court's order determining that the Statutes were "inapplicable" as a matter of law to a claim for UIM benefits arising from a car accident occurring in 2005. After analyzing the plain language and legislative history of the Statutes, the *Kisselman* division concluded that "the General Assembly intended the Statutes to apply prospectively to an insurer's acts of unreasonable delay or denial that occur after August 5, 2008, regardless of when the original claim for benefits was made." *Kisselman*, —— P.3d at ——. The division also observed:

> [T]he district court [in *Kisselman*], the court in *James River*, and American Family [the insurer] all seemingly assume that a claim brought under sections 10–3–1115 and 10–3–1116 and a common law bad faith claim are the same thing. As our discussion … makes clear, they are not. Instead, the Statutes create a new private right of action for insureds in addition to and different from a common law bad faith claim. And the insured's burden of proving that statutory claim is less onerous than that required to prove a claim under the common law for breach of the duty of good faith and fair dealing. Accordingly, although cases discussing common law bad faith claims may be helpful, our analysis must focus on the statutory language found in sections 10–3–1115 and 10–3–1116 to give effect to the intent of the General Assembly.

*Id.* (citations omitted). Accordingly, the *Kisselman* division declined to address retroactive application of the Statutes but held that they could apply prospectively to new acts occurring after their effective date. *Id.*

### C. Application

¶ 27 Although defendant frames the issue as whether the Statutes may be applied retroactively, we think the dispositive question is whether the Statutes apply to acts occurring after their effective date despite the common law principle that bad faith encompasses a cumulative course of conduct. Like the *Kisselman* division, we conclude that the Statutes create a new right of action, separate from common law bad faith, which is available for acts occurring after August 5, 2008. Because we perceive only prospective operation of the Statutes here, we need not analyze the constitutionality of retroactive application or decide whether the Statutes implicate vested rights or merely create a new procedural remedy.

¶ 28 Here, we agree with the trial court that a reasonable jury could find that defendant engaged in new acts of unreasonable denial and delay after August 5, 2008, sufficient to impose liability under the Statutes. Although the evidence presented at trial included defendant's January 2008 settlement offers and its initial determination that not all of plaintiff's medical treatment was relevant to plaintiff's breach of contract claim as well as to the general procedural history of the parties' interaction. The jury was not asked to find the precise date that the contract was breached; thus, there is no inherent inconsistency in the statutory and contract claims being predicated on different conduct occurring at different times. And there is nothing in the record to indicate that plaintiff asserted the breach of contract occurred on a specific date.

¶ 29 We disagree with defendant's assertion that "the jury could not be expected to separate American Family's January 30, 2008, claim determination from anything that occurred after August 5, 2008." The jury was explicitly instructed to limit its consideration of the statutory claim to conduct occurring after August 5, 2008, and the

verdict form for that claim repeated the limiting instruction. As the trial court correctly noted, jurors are presumed to follow a court's instructions absent evidence to the contrary. *See Qwest Servs. Corp. v. Blood,* 252 P.3d 1071, 1088 (Colo.2011). Moreover, jurors are routinely asked to consider potentially prejudicial evidence for a limited purpose, and their ability to distinguish between proper and improper inferences from that evidence is presumed. *See, e.g., People v. Ibarra,* 849 P.2d 33, 39 (Colo.1993) (absent a showing of jury bias, it is presumed that the jury understood and heeded the trial court's instructions regarding the limited admissibility of a defendant's prior felony conviction).

¶ 30 Here, the jury heard testimony that defendant requested additional documentation concerning plaintiff's asserted permanent impairment and received an IME report on September 22, 2008, which opined that extensive medical treatment was necessary and causally related to the accident. We are not persuaded that the jury necessarily reached its verdict on the statutory claim by considering defendant's prior dealings with plaintiff. A reasonable jury could have concluded—regardless of how defendant previously handled plaintiff's UIM claim—that it was unreasonable for defendant to request additional information and then ignore the IME findings by refusing to reassess its settlement position. That refusal occurred after August 5, 2008, and it alone would be sufficient to establish liability under the Statutes if the jury credited the testimony given in plaintiff's case-in-chief.

¶ 31 A plaintiff is not required to elect between consistent remedies, *see Newland v. Holland,* 624 P.2d 933, 935 (Colo.App. 1981), and need not assert every fact that may be in his favor when any one of several claims is sufficient to prevail. *See* C.R.C.P. 8(a) ("Relief in the alternative or of several different types may be demanded."); *Bridges v. Ingram,* 122 Colo. 501, 506–07, 223 P.2d 1051, 1054 (1950) ("If, under the facts, the substantive law provided relief upon any 'theory,' the cause should proceed to judgment.").

¶ 32 Plaintiff's theory of the case, at least with respect to the statutory claim, was not that defendant improperly extended a "lowball" settlement offer, but that it unreasonably ignored information in the IME report showing that plaintiff was entitled to additional compensation. During closing arguments, plaintiff's counsel stated:

> After August 5, 2008, I sent Mr. Vaccaro to get a second opinion from Dr. Nadler because American Family indicated they needed more information. Dr. Nadler could answer all the questions they had. That's why he went to him. When the report was sent to American Family, they said, "I don't care."

¶ 33 Defendant argued that plaintiff's claim was a "paid-for case" based on the examination by a doctor and testimony of a bad faith expert, both retained only for litigation. Consequently, defendant argued that it was reasonable to be skeptical of the IME report's findings in light of inconsistent records from plaintiff's treating physicians.

¶ 34 We note, however, that the credibility of testimony and the weight to be given to the IME report and Dr. Nadler's testimony are issues properly left to the jury. The credibility of the witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn therefrom are all within the province of the fact finder, whose decision will not be disturbed on review unless manifestly erroneous. *See Broncucia v. McGee,* 173 Colo. 22, 25, 475 P.2d 336, 337 (1970).

¶ 35 The asserted principle that "[a]n insurer's continued refusal to cooperate with an insured cannot serve as the basis for a separate bad faith claim," *New Salida Ditch Co.,* 2009 WL 5126498, at *4, does not compel a different result. As the *Kisselman* division observed, common law bad faith precedent is helpful, but not dispositive, when interpreting a statutory right of action expressly intended to apply "in addition to ... other actions available by statute or common law." § 10-3-1116(4). The trial court here acknowledged as much by denying plaintiff's motion seeking to add a common law bad faith claim because the two actions involved "different standards." Denial of that motion also underscores the fact that

common law bad faith is not at issue in this appeal.

¶ 36 Although plaintiff's UIM claim was filed and processed in part before the Statutes took effect, it does not necessarily follow that defendant was held retroactively liable for "transactions or considerations already past," *DeWitt*, 54 P.3d at 854. Rather, the jury was appropriately instructed to determine whether defendant's conduct violated the Statutes at any point after their effective date.

¶ 37 Defendant nevertheless asserts that it could not argue to the jury that the actions of plaintiff's counsel in June 2008, in which she requested defendant to consider plaintiff's permanent impairment, and her later referral of plaintiff to Dr. Nadler for an IME, were specifically intended to bring the facts in this case within the effective date of the Statutes. But we perceive nothing that would have prevented such an assertion if defendant had presented evidence supporting it. Defendant acknowledges that it could have presented testimony from a bad faith expert. Presumably, such an expert could have pointed out that plaintiff's counsel had contrived the timing. But defendant chose not to present an expert, even though it had endorsed one.

¶ 38 Accordingly, we conclude that there is no retrospective application of the Statutes here, and that the trial court properly submitted plaintiff's statutory claim to the jury and properly denied defendant's motions to direct a contrary verdict.

## III. Sufficiency of Evidence

¶ 39 Defendant contends that there was insufficient evidence of unreasonableness to support plaintiff's statutory claim. It argues that the disagreement between plaintiff and it essentially presented a valuation dispute, and that an insurer cannot act unreasonably by denying a claim that is "fairly debatable." Like the trial court, we conclude that the evidence was sufficient to support the jury's verdict.

### A. Standard of Review

¶ 40 Defendant raised this issue by motions for directed verdict, JNOV, and new trial. Considerable discretion is vested in the trial court in ruling on a new trial motion, and its ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. *Aspen Skiing Co. v. Peer*, 804 P.2d 166, 172 (Colo.1991). We review de novo, however, the grant or denial of a motion for directed verdict or JNOV. *Cardenas*, 254 P.3d at 1167; *Marquardt v. Perry*, 200 P.3d 1126, 1128 (Colo.App.2008); *MDM Group Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 885 (Colo.App.2007). Accordingly, we reject the parties' apparent agreement that the decision whether to grant a directed verdict or JNOV should be reviewed only for abuse of discretion. In any event, we would reach the same result under either standard. *See Marquardt*, 200 P.3d at 1128–29 (reviewing claim under more liberal de novo standard for purposes of analysis).

### B. Law

¶ 41 Under Colorado law, it is reasonable for an insurer to challenge claims that are "fairly debatable." *Zolman v. Pinnacol Assur.*, 261 P.3d 490, 496 (Colo.App. 2011) (quoting *Savio*, 706 P.2d at 1275). An insurer is under no obligation to negotiate a settlement when there is a genuine disagreement as to the amount of compensable damages payable under the terms of an insurance policy. *Bucholtz v. Safeco Ins. Co.*, 773 P.2d 590, 593 (Colo.App.1988).

¶ 42 What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law. *Zolman*, 261 P.3d at 497; *see also Bankr. Estate of Morris*, 192 P.3d at 524. Thus, if a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was "fairly debatable," this weighs against a finding that the insurer acted unreasonably. *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo.App.2010). Nevertheless, "fair debatability is not a threshold inquiry that is out-

come determinative as a matter of law." *Id.* at 1218.

### C. Application

¶ 43 Defendant contends that the evidence at trial established at most a genuine disagreement over its valuation of plaintiff's UIM claim. Because such a claim would necessarily be "fairly debatable," defendant asserts that its conduct was reasonable as a matter of law. It argues, therefore, that the trial court erred by sustaining the jury's verdict on plaintiff's statutory claim and not entering JNOV or ordering a new trial. We disagree.

¶ 44 Again, we note that a legal standard derived from common law bad faith cases does not necessarily govern plaintiff's claim under the Statutes. This is particularly true because the "fairly debatable" defense goes as much to the knowledge or recklessness prong of common law bad faith as it does to unreasonable conduct. *See Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567, 572 (Colo.App.2003) ("If an insurer does not know that its denial of a claim is unreasonable and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable."). By contrast, the only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis. Even if plaintiff's claim for UIM benefits were "fairly debatable" in the common law context, that would not alone establish that defendant's actions here were reasonable as a matter of law. *See Sanderson,* 251 P.3d at 1218.

¶ 45 Moreover, JNOV is warranted only if a reasonable person could not reach the same conclusion as the jury, when viewing the evidence in the light most favorable to the party against whom the motion is directed. *Boulder Valley Sch. Dist. R–2 v. Price,* 805 P.2d 1085, 1088 (Colo.1991), *overruled in part by Comm. Hosp. v. Fail,* 969 P.2d 667 (Colo.1998).

¶ 46 Here, defendant did not present any evidence at trial, relying instead on plaintiff's prior statements to paramedics and treating physicians that he was not seriously injured in the auto accident and was not in severe pain. Although defendant points to testimony contradicting the testimony of Dr. Nadler and the IME report, witness credibility and reasonableness under the circumstances are matters for the jury when, as here, material facts are in dispute. *See Zolman,* 261 P.3d at 497. The jury here was specifically instructed that "[i]t is not unreasonable conduct for an insurance company to challenge a claim that is fairly debatable." Its verdict for plaintiff indicates that the jury considered and rejected this defense.

¶ 47 We also conclude that defendant reads too much into the meaning of "fairly debatable" by suggesting that an insurer can avoid liability for unjustified denials of benefits simply by framing each denial as a valuation dispute. *Bucholtz, Zolman,* and *Sanderson* stand for the proposition that a genuine difference of opinion over the value of an insurance claim weighs against a finding of bad faith. But every lawsuit over insurance coverage is a valuation dispute to the extent that the parties disagree about how much should be paid under a policy, or whether the policy provides for coverage at all. If every such claim is "fairly debatable" as a matter of law, the exception would swallow the rule, and insurers could refuse to pay any claim where money is at issue. We decline to reach that conclusion.

¶ 48 Consequently, we conclude that plaintiff provided evidence at trial beyond a merely subjective opinion on whether defendant acted reasonably. Particularly in light of plaintiff's theory that defendant requested— and then ignored—the IME report, a reasonable jury could have found that defendant refused to consider evidence showing plaintiff was entitled to additional compensation. We decline to disturb the jury's judgment by holding that such a claim was "fairly debatable" as a matter of law. Thus, the court properly denied defendant's motions for a directed verdict, for JNOV, and for a new trial.

### IV. Prejudgment Interest

¶ 49 Defendant asserts that even if plaintiff would ordinarily be entitled to prejudgment interest, its liability is capped at $75,000, the

amount of benefits remaining under the UIM policy. Because the jury awarded plaintiff the policy limit of $75,000 in contract damages, defendant contends that the trial court erroneously ordered it to pay an additional $40,539 in prejudgment interest. We agree.

## A. Standard of Review

¶ 50 Interpretation of the statute governing the award of prejudgment interest in personal injury cases is a question of law that we review de novo. *Morris v. Goodwin*, 185 P.3d 777, 779 (Colo.2008). The statutory right to interest on personal injury money judgments in Colorado is in derogation of the common law, and, therefore, must be strictly construed. *Sperry v. Field*, 186 P.3d 133, 137 (Colo.App.2008), *aff'd*, 205 P.3d 365 (Colo.2009).

## B. Preservation of Issue

¶ 51 Plaintiff contends that defendant waived the right to appeal this issue because it initially conceded that "[i]t appears that plaintiff has applied the correct calculation of the right to prejudgment interest on the UIM benefit award of $75,000." Although defendant later filed a "corrected response" disputing that calculation and a motion to reconsider the court's interest award, plaintiff asserts that these actions came too late to preserve the issue for appeal. We disagree.

¶ 52 An objection is sufficient so long as it calls the court's attention to the specific point it addresses. *Am. Family Mut. Ins. Co. v. DeWitt*, 216 P.3d 60, 67 (Colo.App. 2008), *aff'd*, 218 P.3d 318 (Colo.2009).

¶ 53 A court has discretion to accept the filing of an amended pleading or response. *See Lyons v. Teamsters Local Union No. 961*, 903 P.2d 1214, 1222 (Colo.App. 1995).

¶ 54 Here, defendant raised its objection three days after it initially indicated agreement with plaintiff's position. It did so in a "corrected response" that was filed well before the court acted. The court actually considered defendant's objection, thereby implicitly accepting the filing. We perceive no abuse of discretion in the court's doing so, and we conclude that the objection clearly preserved the issue for appellate review.

## C. Law

¶ 55 Pursuant to section 10–4–609(4), C.R.S.2011, "[u]ninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." The statute was enacted "to provide an insured with benefits to the extent necessary to recover for loss caused by a negligent and financially irresponsible motorist, subject to policy limits." *USAA v. Parker*, 200 P.3d at 358 (quoting *Kral v. Am. Hardware Mut. Ins. Co.*, 784 P.2d 759, 765 (Colo.1989)).

¶ 56 Prejudgment interest is a form of damages. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 20–21 (Colo.1990). Because it is part of the compensation awarded for bodily injury, prejudgment interest is comprehended within the bodily injury coverage of an insurance policy and is subject to those policy limits. *Id.*

¶ 57 The supreme court in *Parker* held that a UIM insurer is not liable for prejudgment interest in excess of policy limits, overruling *Peterman v. State Farm Mutual Automobile Insurance Co.*, 8 P.3d 549, 551 (Colo.App.2000). The court reasoned that "[b]ecause prejudgment interest is an element of 'damages,' the language of section 10–4–609 mandates that the insured recover the same measure of prejudgment interest he would be entitled to recover in a direct action against the tortfeasor." *Parker*, 200 P.3d at 353. Thus, "the UIM insurer must account for the prejudgment interest an innocent insured would have recovered against the tortfeasor had the tortfeasor obtained liability insurance in amounts equal to the insured's coverage," but not in excess of that coverage. *Id.* at 359.

## D. Application

¶ 58 We agree with defendant that *Parker* compels a limitation upon plaintiff's award of prejudgment interest to the benefit payable under his UIM policy. Because plaintiff was awarded the $75,000 remaining under his

UIM policy as damages for breach of contract, we conclude that defendant is not liable for prejudgment interest above that amount.

¶ 59 Here, the parties stipulated that plaintiff had a $100,000 UIM policy limit and recovered $25,000 from the at-fault driver. At the time of plaintiff's accident, the Colorado UIM statute provided:

The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or

(b) The amount of damages sustained, but not recovered.

Ch. 92, sec. 1, § 10–4–609(5), 1983 Colo. Sess. Laws 454–55 (repealed by Ch. 413, sec. 2, 2007 Colo. Sess. Laws 1922); *cf.* § 10–4–609(1)(c), C.R.S.2011 (current description of UIM maximum liability). Defendant was permitted by statute to offset from plaintiff's UIM benefits any amount recovered in his settlement with the tortfeasor. *See Carlisle v. Farmers Ins. Exch.*, 946 P.2d 555, 558 (Colo.App.1997). Thus, it is undisputed that plaintiff's UIM policy provided $75,000 in available benefits. It follows that the jury award of $75,000 on plaintiff's contract claim exhausted his UIM coverage, and defendant could not be liable for prejudgment interest in excess of that policy limit.

¶ 60 We are not persuaded by plaintiff's assertion that "[i]t is well established that when a third-party carrier is found to act unreasonably, it may be liable to its insured for those damages assessed against the insured in excess of the policy limits." This argument relies on common law bad faith cases that, as we have discussed, have limited bearing on plaintiff's claims. Moreover, plaintiff conflates third-party insurance coverage with the first-party coverage at issue here. As section 10–4–609(4) makes clear, UIM coverage creates a first-party relationship in which the insured may recover from his own insurer to the same extent he is legally entitled to collect from the driver of an underinsured vehicle, up to the policy limit. This is not a situation where an insurer may be liable for additional damages resulting from its bad faith refusal to defend its own policy holder against the claim of a third party. *See Nunn v. Mid–Century Ins. Co.*, 244 P.3d 116, 119 (Colo.2010) (comparing first-party and third-party bad faith). In light of the *Parker* court's explicit holding that a prejudgment interest award may not exceed the limits of a UIM policy, we need not rely on analogies to third-party coverage.

¶ 61 Accordingly, we must vacate the interest award and remand with directions to issue an amended judgment.

¶ 62 That part of the judgment awarding prejudgment interest is vacated. The balance of the judgment is affirmed, and the case is remanded to the trial court with directions to issue an amended judgment consistent with this opinion.

Judge LICHTENSTEIN and Judge MILLER concur.