Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the Colorado
Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 5, 2018

**2018 CO 87**

**No. 18SA135, <u>Schultz v. GEICO Casualty Company</u>—Insurance—Bad Faith— § 10-3-1115, C.R.S. (2018)—Fair Debatability—C.R.C.P. 35—Independent Medical Exams.**

In this original proceeding pursuant to C.A.R. 21, the supreme court reviews the district court's order requiring the plaintiff-petitioner to undergo an independent medical examination ("IME"), pursuant to C.R.C.P. 35, at the request of the defendant-respondent. The court issued a rule to show cause and now makes the rule absolute.

In this case, the plaintiff, who was insured by the defendant, alleged that the defendant insurance company breached its duty of good faith and fair dealing and violated its statutory obligation to evaluate and pay her insurance claim without unreasonable delay. The defendant denied liability, asserting that because the question of medical causation was "fairly debatable" at the time it made its coverage decision, it did not act unreasonably or in bad faith. To establish these defenses, the defendant sought an IME of the plaintiff, and over the plaintiff's objection, the district court granted that request.

The court now concludes that the defendant's conduct must be evaluated based on the evidence before it when it made its coverage decision and that, therefore, the defendant is not entitled to create new evidence in order to try to support its earlier coverage decision. Accordingly, the court further concludes that the district court abused its discretion when it ordered the plaintiff to undergo an IME over three years after the original accident that precipitated this case and a year and a half after the defendant had made the coverage decision at issue.

The court therefore makes the rule to show cause absolute.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

### 2018 CO 87

### Supreme Court Case No. 18SA135
*Original Proceeding Pursuant to C.A.R. 21*
Weld County District Court Case No. 17CV30881
Honorable Marcelo Kopcow, Judge

### In Re
### Plaintiff:
Charissa Schultz

v.

### Defendant:

GEICO Casualty Company.

### Rule Made Absolute
*en banc*
November 5, 2018

**Attorneys for Plaintiff:**
Speights & Worrich, LLC
David Roth
Jennifer A. Milne
*Denver, Colorado*

**Attorneys for Defendant:**
Deisch, Marion & Klaus, P.C.
Gregory K. Falls
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 In this original proceeding pursuant to C.A.R. 21, we review the district court's order requiring the plaintiff-petitioner, Charissa Schultz, to undergo an independent medical examination ("IME"), pursuant to C.R.C.P. 35, at the request of the defendant-respondent GEICO Casualty Company. We issued a rule to show cause and now make the rule absolute.

¶2 In this action, Schultz alleges that GEICO breached its duty of good faith and fair dealing and violated its statutory obligation to evaluate and pay her insurance claim without unreasonable delay. GEICO denies liability, asserting that because the question of medical causation was "fairly debatable" at the time it made its coverage decision, it did not act unreasonably or in bad faith. To establish these defenses, GEICO sought an IME of Schultz, and over Schultz's objection, the district court granted that request.

¶3 We now conclude that GEICO's conduct must be evaluated based on the evidence before it when it made its coverage decision and that, therefore, GEICO is not entitled to create new evidence in order to try to support its earlier coverage decision. Accordingly, we further conclude that the district court abused its discretion when it ordered Schultz to undergo an IME over three years after the original accident that precipitated this case and a year and a half after GEICO had made the coverage decision at issue.

## I. Facts and Procedural Background

¶4 In February 2015, Schultz and another driver collided when the other driver failed to stop at a stop sign. Thereafter, Schultz underwent multiple knee replacement surgeries.

¶5 The other driver's insurance company settled with Schultz for its $25,000 policy limit, and Schultz then made a demand for uninsured/underinsured motorist ("UM/UIM") benefits under her GEICO policy, which also had a $25,000 policy limit. In connection with this demand, Schultz provided GEICO with medical authorizations to allow it to obtain the medical records associated with her claim.

¶6 In April 2017, after months of correspondence and apparent review of an MRI performed on Schultz in April 2015, GEICO offered Schultz its full policy limit, and it did so without requesting that she undergo an IME. Indeed, GEICO's claim logs reveal that at the time GEICO decided to offer Schultz its policy limits, it "concede[d] peer review wouldn't be necessary," indicating an affirmative decision not to request an IME.

¶7 A few months later, Schultz filed the present lawsuit asserting claims for bad faith breach of an insurance contract and, pursuant to sections 10-3-1115 and 10-3-1116, C.R.S. (2018), unreasonable delay in the payment of covered benefits. GEICO denied liability, disputing the extent and cause of Schultz's claimed injuries and asserting that causation surrounding the knee replacement surgeries was "fairly debatable" because Schultz had preexisting arthritis, which GEICO claimed may independently have necessitated her surgeries.

¶8 As part of its effort to support these defenses, GEICO requested that Schultz undergo a medical examination pursuant to C.R.C.P. 35. Schultz objected, arguing that C.R.C.P. 35 was inapplicable because her physical condition was no longer in controversy. The parties attended a hearing before the district court to resolve this question.

3

¶9 At the hearing, GEICO contended that it had decided to pay Schultz's UM/UIM claim even though it had recognized that the question of causation was unresolved. In light of Schultz's current claims, however, GEICO argued that causation was again a live issue because "[y]ou can't delay a benefit that was never owed." GEICO thus asserted that it was entitled to explore the causation issue through, among other means, an IME of Schultz. Schultz disagreed, asserting that the reasonableness of GEICO's conduct had to be evaluated based on the information that GEICO had at the time it evaluated her claim. The district court ultimately agreed with GEICO and ordered Schultz to undergo the C.R.C.P. 35 examination.

¶10 Schultz then filed a petition for a rule to show cause pursuant to C.A.R. 21, which we granted.

## II. Analysis

¶11 We begin by discussing our jurisdiction to hear this matter. We then address the legal framework for claims that an insurer has unreasonably and in bad faith delayed payment to a policy holder. Finally, we consider whether GEICO is entitled to obtain an IME of Schultz long after it made its coverage decision.

## A. Jurisdiction

¶12 Although discovery issues generally fall within the discretion of the district court and the appropriate mechanism for reviewing such decisions is by appeal rather than by original proceeding,

> [w]hen . . . a procedural ruling may significantly affect a party's ability to litigate the merits of a case and may cause damage to a party that cannot be

4

cured on appeal, it is appropriate to challenge a trial court's order relating to matters of pretrial discovery by way of an original proceeding.

*Belle Bonfils Mem'l Blood Ctr. v. Dist. Court*, 763 P.2d 1003, 1013 (Colo. 1988). In addition, we may exercise our discretion under C.A.R. 21 to consider "issues of significant public importance that we have not yet considered." *Wesp v. Everson*, 33 P.3d 191, 194 (Colo. 2001).

¶13    Here, the district court ordered Schultz to undergo a medical examination against her will, and this decision implicates her privacy interests in her body and her health. *See Doe v. High-Tech Inst., Inc.*, 972 P.2d 1060, 1068 (Colo. App. 1998) (noting "a generally recognized privacy interest in a person's body," as well as a "generally recognized privacy interest in information concerning one's health"). Because a violation of these interests could not adequately be remedied on appeal, we invoke our original jurisdiction pursuant to C.A.R. 21 to review the trial court's order. *See Ortega v. Colo. Permanente Med. Group, P.C.*, 265 P.3d 444, 447 (Colo. 2011) (invoking our C.A.R. 21 jurisdiction when the enforcement of the order at issue would have resulted in the disclosure of a party's medical records and such disclosure, if erroneous, could not properly have been remedied on appeal).

## B. Claims for the Unreasonable Delay or Denial of Benefits

¶14    Due to the significant disparity in bargaining power between an insurer and its insured, we have recognized the special nature of insurance contracts and of the relationship between an insurer and its insured, and we have concluded that in addition to liability for breach of contract, an insurer's bad faith breach of an insurance contract

5

also gives rise to tort liability. *See Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010). Thus, an insured may bring a claim asserting that its insurer, acting in bad faith, has unreasonably refused or delayed payment on a claim. *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004).

¶15 To prevail on such a claim, the insured "must establish that the insurer acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985). The reasonableness of the insurer's conduct is determined objectively and is "based on proof of industry standards." *Goodson*, 89 P.3d at 415. Moreover, we have observed that "[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision." *State Farm Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011) (quoting *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996), *aff'd*, 955 P.2d 1008 (Colo. 1998)). Thus, in defending against a bad faith claim by attempting to show that it acted reasonably, an insurer may present all of the information that it considered at the time it made the decision to delay or deny the claim. *Id.*

¶16 In addition to the above-described common law bad faith claim, the Colorado General Assembly has provided a statutory remedy against insurance companies that unreasonably delay or deny benefits owed.

¶17 Section 10-3-1115 provides, in pertinent part:

> (1)(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

6

. . . .

> (2) . . . for the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

¶18 Section 10-3-1116(1), in turn, provides that a first-party claimant whose claim for benefits has been unreasonably delayed or denied may bring an action "to recover reasonable attorney fees and court costs and two times the covered benefit" from an insurance company responsible for the unreasonable delay or denial.

¶19 Although this court does not appear to have addressed the issue, decisions of both the Colorado Court of Appeals and federal courts interpreting Colorado law have consistently recognized that proof of a statutory claim differs from proof of a common law claim. Specifically, these courts have noted that whereas a common law claim requires proof that the insurer acted unreasonably and that it knew or recklessly disregarded the fact that its conduct was unreasonable, "the only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis." *Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9M, ¶¶ 21, 44, 275 P.3d 750, 756, 760; *accord Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1107 (D. Colo. 2013); *see also Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 975 (Colo. App. 2011) (noting that the insured's burden of proving a statutory claim is "less onerous" than his or her burden of proving a common law claim).

¶20 In this case, GEICO denies that it acted in bad faith and asserts that it acted reasonably because the issue of coverage was "fairly debatable," given that the adjuster

7

had identified questions about the cause of Schultz's knee replacements from the outset of the evaluation of her claim. "Fair debatability" is a factor in determining whether an insurer acted reasonably. *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010). "[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably." *Vaccaro*, ¶ 42, 275 P.3d at 759. Fair debatability, however, "is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case." *Sanderson*, 251 P.3d at 1218.

¶21 Having described the elements of the claims at issue, as well as GEICO's pertinent defense thereto, we turn to the question of whether the district court erred in ordering Schultz to undergo the IME that GEICO had requested.

## C. The Requested IME

¶22 In *Reyher*, 266 P.3d at 390, we observed that the reasonableness of an insurance company's decision to deny benefits is to be evaluated based on the information before the insurer at the time it made its decision. Divisions of our court of appeals and of other federal and state courts appear to have consistently reached the same conclusion. *See, e.g.*, *Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship*, 106 F.3d 1465, 1470 (9th Cir. 1997) ("The bad faith claim required the jury to determine whether Insurer's denial of coverage was unreasonable when it occurred, not whether later developments could have vindicated the Insurer's decision."); *Austero v. Nat'l Cas. Co.*, 148 Cal. Rptr. 653, 673 (Cal. Ct. App. 1978) ("In evaluating the evidence to see if there was any unreasonable conduct

8

by the Company, it is essential that no hindsight test be applied. The reasonable or unreasonable action by the Company must be measured as of the time it was confronted with a factual situation to which it was called upon to respond."), *disapproved on other grounds by Egan v. Mut. of Omaha Ins. Co.*, 620 P.2d 141, 149 n.7 (Cal. 1979); *Peiffer*, 940 P.2d at 970 ("An insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision."); *Southgate Bank v. Fid. & Deposit Co.*, 794 P.2d 310, 316 (Kan. Ct. App. 1990) ("Whether just cause exists is to be determined by the circumstances facing the insurer when payment is denied, judged as they would appear to a reasonably prudent person having a duty to investigate in good faith."); *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1109, 1114 (Okla. 1991) (noting that "[t]he knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim" and that therefore, the insurer-defendant could not rely on information that it obtained after it denied the claim).

¶23    We perceive no basis to depart from this well-established principle, and, thus, we reaffirm that the reasonableness of an insurer's decision to deny or delay benefits to its insured must be evaluated based on the information that was before the insurer at the time it made its coverage decision. The question thus becomes whether GEICO's requested IME could provide information that is somehow relevant to the decision that it made over a year ago to pay Schultz the limits of her UM/UIM coverage. For two reasons, we conclude that it cannot.

¶24    First, GEICO has not shown, and we perceive no basis on which to conclude, that newly developed medical evidence would be pertinent to the question of what GEICO

9

knew when it made its coverage decision in this case. As the Ninth Circuit observed in *Fireman's Fund*, 106 F.3d at 1470, a bad faith claim requires an assessment of whether the insurer's coverage decision was unreasonable when it occurred, "not whether later developments could have vindicated the Insurer's decision." *See also Buzzard*, 824 P.2d at 1114 (noting that an insurer could not defend against a bad faith claim by relying on information that it obtained after it denied that claim).

¶25 Second, GEICO has not explained, nor can we discern from the record before us, how the state of Schultz's medical condition today would be relevant to her medical condition over a year ago, when GEICO made its coverage decision.

¶26 Accordingly, on the record facts now before us, we conclude that the district court abused its discretion in ordering Schultz to undergo the IME that GEICO had requested.

¶27 In so concluding, we are not persuaded by GEICO's reliance on *Peiffer*, 940 P.2d at 969–71. Like this case, *Peiffer* involved a car accident and a subsequent first-party dispute between an insurance company and its insured. *Id.* at 969. There, the insurer paid its insured for various treatments and therapies, as well as for wage loss and services, before requesting a series of IMEs of the insured. *Id.* Based on the results of these IMEs, the insurer advised its insured that except for one type of therapy, it would no longer pay for any of the insured's treatments. *Id.* The insured then sued for breach of contract and bad faith breach of an insurance policy. *Id.* The case proceeded to trial, where the insurer attempted to introduce testimony from the doctors who performed the IMEs, as well as from a neuropsychologist who had examined the insured's medical records *after* the litigation had commenced. *Id.* at 970. The trial court excluded this proffered evidence as

10

irrelevant, but a division of the court of appeals reversed, concluding that such evidence was relevant to the reasonableness of the denial of the insured's claim. *Id.* at 970–71.

¶28     GEICO relies heavily on the *Peiffer* division's decision to admit the testimony of the neuropsychologist even though he had not reviewed the pertinent records until after the insurer had made its coverage decision. The circumstances there, however, are different from those now before us. In *Peiffer*, the insurer sought to introduce testimony from an expert witness who had evaluated the medical records that the insurer had obtained *before* it made its coverage decision. *Id.* at 970. Thus, the insurer was not seeking to create new evidence to justify a previous benefits decision. *Id.* Rather, it was seeking to introduce an expert's opinion on evidence that existed *before* the insurer made its decision. *Id.* Here, in contrast, GEICO seeks a *new* medical examination, with the apparent intention of introducing such post-coverage-decision evidence to establish the reasonableness of its earlier coverage decision. For the reasons set forth above, we conclude that it cannot do so.

## III.  Conclusion

¶29     For these reasons, we conclude that GEICO's conduct must be evaluated based on the evidence before it when it made its coverage decision in Schultz's case and that, therefore, GEICO is not entitled to create new evidence in order to try to support its earlier coverage decision. Accordingly, we further conclude that the district court abused its discretion when it ordered Schultz to undergo the C.R.C.P. 35 examination that GEICO had requested.

¶30     We thus make the rule to show cause absolute.

11