Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 9, 2019

**2019 CO 103**

**No. 19SA151, *In Re People v. B.B.A.M.*—Juveniles—Competency to Stand Trial—Assessing Restoration to Competency.**

The supreme court considers whether the juvenile court may order a second competency evaluation in lieu of holding a restoration review pursuant to section 19-2-1303(2), C.R.S. (2019), or a restoration hearing pursuant to section 19-2-1304(1), C.R.S. (2019).  The court concludes that the juvenile court may not do so.  Under section 19-2-1305(1), C.R.S. (2019), the court may find that the juvenile has been restored to competency either during a restoration review or after holding a restoration hearing.

Because the relevant statutes do not permit a juvenile court to order a second competency evaluation to determine whether a juvenile has been restored to competency, the court rules that the district court erred in affirming the juvenile court's order.  Accordingly, the court reverses the district court's order and

remands with instructions to return the case to the juvenile court for a restoration review or a restoration hearing.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 103

**Supreme Court Case No. 19SA151**
*Original Proceeding Pursuant to C.A.R. 21*
Jefferson County District Court Case No. 17JD452
Honorable Ann Gail Meinster, Judge

_____

**In Re**

**Petitioner:**

The People of the State of Colorado,

**In the Interest of**

**Juvenile:**

B.B.A.M.,

**and Concerning**

**Respondent:**

P.M.

_____

**Rule Made Absolute**
*en banc*
December 9, 2019

_____

**Attorneys for Petitioner:**
Peter A. Weir, District Attorney, First Judicial District
Colleen R. Wort, Appellate Deputy District Attorney
    *Golden, Colorado*

**Attorney for Juvenile:**
Diana M. Richett
    *Lakewood, Colorado*

No appearance on behalf of Respondent.

**JUSTICE SAMOUR** delivered the Opinion of the Court.
**JUSTICE BOATRIGHT** dissents, and **JUSTICE HART** joins in the dissent.

¶1     The juvenile court found B.B.A.M. incompetent to proceed and ordered him to receive competency restoration services.  Following the provision of those services, it ordered, over his objection, a second competency evaluation to determine whether he had been restored to competency.  B.B.A.M. appealed, but the district court upheld the juvenile court's order.  We subsequently granted B.B.A.M.'s petition for a rule to show cause pursuant to C.A.R. 21.  And we now make the rule absolute.

¶2     After a juvenile court finds a juvenile incompetent to proceed and orders him to receive competency restoration services, section 19-2-1303(2), C.R.S. (2019), requires the court to "review the provision of and the juvenile's participation in the services and the juvenile's progress toward competency at least every ninety days until competency is restored" or every thirty days if the juvenile is in custody. Section 19-2-1304(1), C.R.S. (2019), in turn, authorizes the court to "order a restoration to competency hearing . . . at any time on its own motion, on motion of the prosecuting attorney, or on motion of the juvenile."  Under section 19-2-1305(1), C.R.S. (2019), the court may find that the juvenile has been restored to competency either "during a review" pursuant to section 19-2-1303(2) or after holding a "restoration to competency hearing" ("restoration hearing") pursuant to section 19-2-1304(1).

3

¶3    Because the relevant statutes do not permit a juvenile court to order a second competency evaluation to determine whether a juvenile has been restored to competency, the district court erred in affirming the juvenile court's order.  There was no basis to compel B.B.A.M. to undergo a second competency evaluation in lieu of holding a restoration review pursuant to section 19-2-1303(2) or a restoration hearing pursuant to section 19-2-1304(1).  Accordingly, we reverse the district court's order and remand with instructions to return the case to the juvenile court for a restoration review or a restoration hearing.[1]

## I.  Facts and Procedural History

¶4    The People filed a petition in delinquency against B.B.A.M., charging him with one count of third degree burglary and three counts of criminal mischief. B.B.A.M.'s counsel filed a motion to determine competency pursuant to section 19-2-1301(3)(b), C.R.S. (2019).  Because the court felt it lacked adequate information to make a preliminary finding regarding B.B.A.M.'s competency, it ordered the Colorado Department of Human Services ("DHS") to conduct an outpatient competency evaluation.  *See* § 19-2-1302(1), C.R.S. (2019).  After examining B.B.A.M., the competency evaluator filed a report in which she concluded he was

---

[1] Given this disposition, we do not address B.B.A.M.'s assertion that compelling him to submit to a second court-ordered competency evaluation would violate his Fifth Amendment privilege against self-incrimination.

4

incompetent to proceed, determined there was a likelihood of restoring him to competency, and recommended the restoration services she deemed appropriate. *See* § 19-2-1302(4)(c). Based on the competency evaluator's report, the court made a preliminary finding of incompetency. *See* § 19-2-1302(2). Since neither party requested a competency hearing within ten days, the court made the preliminary finding of incompetency a final determination. Thus, the court suspended the proceedings and ordered that B.B.A.M. receive outpatient services designed to restore him to competency.

¶5 The court referred B.B.A.M. to DHS's Office of Behavioral Health ("OBH") for restoration services. And, consistent with the requirement for periodic reviews, *see* § 19-2-1303(2), it ordered OBH to submit progress reports every ninety days. This is where things started to go south.

¶6 B.B.A.M. did not begin receiving restoration services until approximately four months later.[2] Further, OBH informed B.B.A.M. that it intended to refer him for a second competency evaluation. B.B.A.M.'s counsel immediately filed a motion seeking the court's intervention. Over the People's objection, the court granted the requested relief and ruled that B.B.A.M. would not be required to

---

[2] The record indicates that the delay may have been caused by new legislation designating OBH as the entity responsible for the coordination of restoration services throughout the state.

undergo a second competency evaluation "as part of [the] competency progress reports" unless "ordered by the Court."

¶7 However, the order reflects that the court believed it had the discretion to order a second competency evaluation under section 19-2-1302(1), the statutory subsection that authorized the initial competency evaluation. *See* § 19-2-1302(1) (setting forth the procedure to be followed "[w]henever the question of a juvenile's competency to proceed is raised"). According to the court, it could compel an indefinite number of competency evaluations because section 19-2-1302(1) allows it to order such an evaluation whenever it lacks "adequate mental health information to determine competency." The court stopped short of ordering a second competency evaluation only because it anticipated that the required progress reports would allow it to determine whether adequate information "exist[ed] to hold a competency hearing and/or order [another] competency examination."

¶8 Finally, the order addressed some concerns expressed by OBH through the People's response. OBH had informed the People that, while its providers could submit progress reports outlining "which days the juvenile went to therapy and whether he is engaged" in restoration services, they could not opine "about whether the juvenile has been restored to competency" or render "an opinion as to competency." More specifically, OBH apparently took the position that its

6

providers had a conflict of interest that prevented them from opining about B.B.A.M.'s progress toward being restored to competency because doing so was tantamount to opining about the effectiveness of the restoration services they were providing. OBH was seemingly troubled because it recognized that there was tension between its conflict-of-interest assertion and section 19-2-1303(2), which it interpreted as calling for a provider of restoration services to report to the court whether a juvenile had been restored to competency or was likely to be restored to competency. Indeed, these concerns appear to have motivated OBH's request to have B.B.A.M. undergo a second competency evaluation.

¶9 The court did not resolve OBH's conflict-of-interest claim because it disagreed with OBH's understanding of section 19-2-1303(2). It concluded that the required progress reports "do not necessitate an opinion from OBH about whether the juvenile has been restored to competency." And, reasoned the court, to the extent the progress reports are "not adequate . . . to make a finding of competence or incompetence, [it] shall order [another] competency examination."

¶10 Because OBH did not submit a progress report within ninety days, B.B.A.M. asked the court to order OBH to provide a status update. The court granted the request and ordered a progress report. OBH did not submit the progress report required by the court, apparently because it was under the mistaken impression that the court had ordered a new competency evaluation. Therefore, in mid-March

7

2019, the court ordered an "evidentiary hearing," which it scheduled to take place on May 1, 2019. The purpose of the hearing was to determine "if restoration remains viable" and whether restoration services "should continue." In connection with that setting, the court ordered the People to "subpoena [the] needed representatives" from OBH to appear at the hearing.

¶11 On April 4, 2019, approximately a month before the hearing, OBH filed a progress report that indicated B.B.A.M. was doing well in the competency restoration program. However, the report contained no opinions. At the May 1 hearing, OBH submitted two additional progress reports, both of which predated the April 4 report; one was dated February 27 and the other March 29. The February 27 report informed the court that B.B.A.M. was "progressing nicely." It specified that he was able to recall and describe "almost all the material" and that he could "describe with prompting" whatever he did not remember. It also mentioned that B.B.A.M. attended all his sessions on time, was always ready to learn, and was consistently "motivated to become competent and proceed with his case." The March 29 report contained similar information. But neither report set forth any opinions.

¶12 The People advised the court at the May 1 hearing that they had not subpoenaed anyone from OBH because OBH's program director had advised them that any providers called to testify could not offer opinions regarding

B.B.A.M.'s competency or the likelihood of B.B.A.M. being restored to competency. According to OBH, its providers could only comment on what B.B.A.M. had done in the competency restoration program, including what modules he had completed, his engagement in the program, and his behavior while in attendance. In other words, OBH was standing by its conflict-of-interest position.

¶13 In light of OBH's stance, and given that more than a year had elapsed since the competency evaluation, the People orally requested a second court-ordered competency evaluation. The court granted the request over B.B.A.M.'s strenuous objection, finding "that when a juvenile's been deemed to be incompetent to proceed, it's in the juvenile's best interest to be restored." In so doing, the court generally agreed with all of the People's assertions: (1) the competency evaluation report was more than a year old; (2) a current competency evaluation was necessary; (3) OBH's providers had raised a conflict-of-interest concern; (4) the court needed to hear from the providers of the restoration services rendered to B.B.A.M.; and (5) the juvenile would suffer no prejudice by undergoing another competency evaluation.

¶14 B.B.A.M. sought judicial review of the juvenile court's order. But the district court sided with the juvenile court and held that section 19-2-1302(1) authorizes court-ordered "competency examinations" whenever the court "feels that the

9

information available to it is inadequate for making a competency finding." The district court also relied on *People in Interest of W.P.*, 2013 CO 11, ¶ 35, 295 P.3d 514, 526, where we stated that "[b]y its plain language, the juvenile determination statute accords the juvenile court discretion to decide when to order a competency evaluation."

¶15 Approximately three weeks later, B.B.A.M. filed a C.A.R. 21 petition invoking our original jurisdiction. And we issued a rule to show cause.

## II. Jurisdiction

¶16 The exercise of original jurisdiction under C.A.R. 21 rests solely within this court's discretion. *People v. Tafoya*, 2019 CO 13, ¶ 13, 434 P.3d 1193, 1195. We have made clear, though, that relief under C.A.R. 21 is "an extraordinary remedy that is limited in both purpose and availability." *People in Interest of T.T.*, 2019 CO 54, ¶ 16, 442 P.3d 851, 855–56 (quoting *Villas at Highland Park Homeowners Ass'n v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 22, 394 P.3d 1144, 1151). In the past, we have exercised our jurisdiction under C.A.R. 21 when an appellate remedy would be inadequate, *Fognani v. Young*, 115 P.3d 1268, 1271 (Colo. 2005), when a party may otherwise suffer irreparable harm, *Hoffman v. Brookfield Republic, Inc.*, 87 P.3d 858, 861 (Colo. 2004), or when a petition raises "issues of significant public importance that we have not yet considered," *Wesp v. Everson*, 33 P.3d 191, 194 (Colo. 2001).

10

¶17 In invoking our original jurisdiction, B.B.A.M. argues that there is no other adequate remedy available, that he will suffer irreparable harm if we do not intervene, and that his petition presents an issue of significant public importance that we have never addressed. We agree with him and conclude that all three grounds justify the exercise of our jurisdiction in this case.

¶18 First, without our intervention, B.B.A.M. will be forced to undergo a second court-ordered competency evaluation. As such, ordinary appellate remedies in the event of an adjudication cannot properly address his claim of error and are inadequate.

¶19 Second, we have recognized that requiring a party "to undergo a medical examination against her will" is a decision that "implicates her privacy interests in her body and her health." *Schultz v. GEICO Cas. Co.*, 2018 CO 87, ¶ 13, 429 P.3d 844, 847. While this case does not involve a medical examination, *Schultz* is nevertheless instructive because the district court upheld the juvenile court's order to have B.B.A.M. undergo a second competency evaluation against his will. If the district court erred in doing so, there is at least potential for irreparable harm.

¶20 Finally, B.B.A.M.'s petition raises an issue of first impression that is of significant public importance. Before 2017, "Colorado's statutory scheme [did] not designate an entity responsible for competency restoration services, nor [did] it provide a sufficient framework for the provision of outpatient restoration services

11

to adults or juveniles." § 27-60-105(1)(a), C.R.S. (2019). "The lack of a designated responsible entity for competency restoration services" led to "inconsistency in competency restoration services . . . and delays in proceedings," thereby impacting "the due process rights of juveniles and adults involved in the juvenile and criminal justice systems." § 27-60-105(1)(b). In 2017, the legislature sought to bridge this gap by designating OBH as the "central organizing structure and *responsible entity* for the provision of competency restoration education services, [and the] *coordination of competency restoration services ordered by the court*." § 27-60-105(2) (emphases added); *see also* § 19-2-1303(2) (charging OBH with "the oversight of restoration education and coordination of services necessary to competency restoration").

¶21 As the juvenile court acknowledged, the implementation of the 2017 legislation has not been without glitches and has caused some confusion. To begin, OBH and the juvenile court understood section 19-2-1303(2) differently —the former felt it required opinions from its providers related to a juvenile's progress toward competency; the latter did not. Additionally, while OBH agreed to provide restoration services to B.B.A.M.,[3] it subsequently took the position that

---

[3] The General Assembly did not require OBH to render competency restoration services throughout Colorado. Rather, as relevant here, it designated OBH as the agency in charge of coordinating such services.

its providers had a conflict of interest that prevented them from opining about his competency or the likelihood of restoring him to competency. This put the People in a pickle at the May 1 hearing.

¶22 We believe that this appeal presents a good opportunity to shed light on the 2017 statutory amendments. Moreover, we are convinced that today's decision will have ramifications for many juveniles throughout the state because the issue before us is likely to recur.

## III. Standard of Review

¶23 Whether the juvenile court correctly determined it had authority to order a second competency evaluation is a question of law that hinges on our interpretation of the relevant statutes. We review de novo questions of statutory interpretation and other questions of law. *See People v. Chavez-Torres*, 2019 CO 59, ¶ 11, 442 P.3d 843, 847; *McCoy v. People*, 2019 CO 44, ¶ 37, 442 P.3d 379, 389.

## IV. Analysis

¶24 The district court relied primarily on section 19-2-1302(1) in upholding the juvenile court's order for a second competency evaluation. Such reliance was misplaced.

¶25 When we interpret a statute, our goal is to give effect to the legislature's intent. *Carrera v. People*, 2019 CO 83, ¶ 17, 449 P.3d 725, 729. We must give the statute's words their plain and ordinary meaning, and we must read those words

"in context" and "according to the rules of grammar and common usage." *Id.* (quoting *McCoy*, ¶ 37, 442 P.3d at 389).

¶26　Like the juvenile court, the district court misconstrued the language of section 19-2-1302(1). That provision is narrower in scope than the two lower courts concluded: It applies "[w]henever the question of a juvenile's competency to proceed is raised" and "the court feels that the information available to it is inadequate" to "make *a preliminary finding* that the juvenile is or is not competent to proceed." § 19-2-1302(1) (emphasis added). In other words, it applies only when a juvenile's competency is *initially* questioned—i.e., before a preliminary finding, let alone a final determination, of competency or incompetency has been made.

¶27　Here, the juvenile court correctly applied the provision when B.B.A.M.'s counsel first raised B.B.A.M.'s competency to proceed. The court ordered a competency evaluation because it felt it had inadequate information to make "a preliminary finding" of competency or incompetency. However, the court erred when it ordered a second competency evaluation. Regardless of the stage in the proceedings when the question of competency is raised, nothing in section 19-2-1302(1) authorizes the court to order a competency evaluation after a *final determination* of incompetency has been made and the juvenile has started receiving court-ordered restoration services. The question at that point is no

14

longer whether the court feels it has inadequate information to make *a preliminary finding of competency or incompetency*; it's whether the juvenile, having received court-ordered restoration services following a final determination of incompetency, *has been restored to competency*. That inquiry is governed by sections 19-2-1304 and 19-2-1305, not section 19-2-1302(1).

¶28 Section 19-2-1304(1) authorizes the juvenile court to "order a restoration to competency hearing . . . at any time on its own motion, on motion of the prosecuting attorney, or on motion of the juvenile." *See also* § 19-2-103(14.3), C.R.S. (2019) ("'Restoration to competency hearing' means a hearing to determine whether a juvenile who has previously been determined to be incompetent to proceed has achieved or is restored to competency."). Such a hearing is required if a party submits a report from a competency evaluator with the requisite qualifications certifying that the juvenile has been restored to competency. *See* § 19-2-1304(1). At a restoration hearing, the court must "determine whether the juvenile has . . . [been] restored to competency." § 19-2-1304(3).[4]

---

[4] Had the juvenile court held a restoration hearing, the People, as the party asserting that B.B.A.M. had been restored to competency, would have had "the burden of submitting evidence and the burden of proof by a preponderance of the evidence." § 19-2-1304(2).

¶29 There is one other method that allows the court to find that a juvenile has been restored to competency—"during a review, as provided in section 19-2-1303(2)." § 19-2-1305(1). Section 19-2-1303(2) states that when the court makes a final determination that a juvenile is incompetent to proceed and orders competency restoration services, it must conduct periodic reviews related to the restoration services being provided, the juvenile's participation in those services, and, importantly, "the juvenile's progress toward competency."

¶30 Here, OBH asserted that its providers had a conflict of interest in opining about B.B.A.M.'s progress toward competency or likelihood of being restored to competency. But the statutory scheme does not contemplate the providers of competency restoration services invoking such a conflict. Indeed, it is difficult to envision how a juvenile court could ever comply with the requirement to periodically review "the juvenile's progress toward competency" if the providers of the competency restoration services refuse to opine about his progress toward competency. Nor is a juvenile court likely to be able to hold a meaningful restoration hearing without the benefit of the providers' opinions. In our view, any individual agreeing to provide competency restoration services does so with the expectation that he or she will report to the court the juvenile's progress toward competency. To the extent it wasn't comfortable allowing its providers to render any opinions, OBH, as the agency responsible for the "coordination of competency

16

restoration services" throughout the state, § 27-60-105(2), should have taken it upon itself to find a qualified outside provider willing to do so.[5]

¶31    Given OBH's conflict claim, we understand why the People requested a second competency evaluation at the May 1 hearing. But we ultimately side with B.B.A.M. because the juvenile court lacked authority to compel him to undergo a second competency evaluation in lieu of holding a restoration hearing or a restoration review.

¶32    We are not persuaded otherwise by our decision in *W.P.* It is true that we said there that the juvenile court has "discretion to decide when to order a competency evaluation." *W.P.*, ¶ 35, 295 P.3d at 526. However, when this statement is read in context, it becomes clear that we did not mean to suggest that a juvenile court may order a second competency evaluation in lieu of holding a restoration hearing or a restoration review. We reiterate that after a court has made a final determination of incompetency and a juvenile has started receiving restoration services, the court must determine whether the juvenile has been

---

[5] We do not mean to validate OBH's conflict claim. On the limited record before us, we fail to apprehend the purported conflict of interest. Having OBH's providers opine that a juvenile has not yet been restored to competency, is not progressing toward such restoration, or is not likely to be so restored is not necessarily an adverse reflection on the efficacy of those services.

17

restored to competency either at a restoration hearing pursuant to section 19-2-1304(1) or during a restoration review pursuant to section 19-2-1303(2).[6]

¶33  The People also refer us to section 19-1-104(3)(a), C.R.S. (2019). But that statute is inapposite. Section 19-1-104 is a jurisdictional statute that does not mention competency, much less restoration to competency.

¶34  In sum, the juvenile court lacked authority to order B.B.A.M. to submit to a second competency evaluation to determine whether he had been restored to competency. It should have held a restoration hearing or a restoration review instead.

## V. Conclusion

¶35  We conclude that the district court erred in upholding the juvenile court's order compelling B.B.A.M. to undergo a second competency evaluation. Therefore, we reverse and remand with instructions to return the case to the juvenile court for further proceedings consistent with this opinion.

**JUSTICE BOATRIGHT** dissents, and **JUSTICE HART** joins in the dissent.

---

[6] We are not aware of any authority that would preclude a party from re-raising the question of a juvenile's competency to proceed after he has been restored to competency. In that situation, the process set forth in the statutory scheme would commence anew. Hence, the court could order another competency evaluation if it felt that the information available was inadequate to make a preliminary finding of competency or incompetency.

JUSTICE BOATRIGHT, dissenting.

¶36 A court may order a competency examination *whenever* it lacks adequate information to determine whether a juvenile is competent to proceed in an adjudication. § 19-2-1302(1), C.R.S. (2019). Despite this unambiguous statutory directive, the majority concludes that a court may not order a juvenile to undergo a second competency examination after it previously made a competency determination. In my opinion, there is no such limitation in the statute. Further, in finding such a limitation, the majority fails to properly consider the word "whenever" in its analysis of the statute. By largely ignoring the word "whenever," the majority unnecessarily limits the trial court's discretion and, in so doing, deprives the court of the information necessary to make an accurate competency determination. As a consequence, a juvenile found to be incompetent may never be deemed restored to competency. I do not believe that the General Assembly intended such a result. Nor do I believe that the majority's interpretation comports with the plain language of section 19-2-1302(1). Hence, I respectfully dissent.

¶37 What the magistrate did in this case makes perfect sense. To briefly summarize the facts, the juvenile here, who had previously been found to be incompetent, had been receiving restorative services for approximately eleven months and was reportedly doing well in those services. Thus, any information

1

the court had regarding the juvenile's competency from the initial competency examination was stale. The court, however, did not have anyone available to opine as to the juvenile's current competency. At that point, the magistrate determined that she did not have adequate information to make a finding of competency. She therefore looked to section 19-2-1302(1) and noted that the question of the juvenile's competency had been raised and the statute provided that whenever competency is raised and the court's information is inadequate to make such a finding, it shall order a competency evaluation. Following the plain language of the statute, she then ordered a second competency examination.

¶38 The plain language of section 19-2-1302(1) provides that the court has the discretion to order a second competency examination whenever the competency of the juvenile is at issue. In its entirety, section 19-2-1302(1) states:

> Whenever the question of a juvenile's competency to proceed is raised, the court shall make a preliminary finding that the juvenile is or is not competent to proceed. If the court feels that the information available to it is inadequate for making such a finding, it shall order a competency examination.

The statute, in effect, allows the parties or the court to raise the issue of the juvenile's competency at *any* stage of the proceeding. At the point in time that the juvenile's competency is called into question, the court must make a preliminary finding regarding the juvenile's competency. Typically, as in the case before us, the court does not have enough information to make such a determination. In that

2

case, the court "*shall* order a competency evaluation." § 19-2-1302(1) (emphasis added).

¶39 The statute does not place limits on when the question of the juvenile's competency may be raised. Nor does it say anything about prior examinations or what the procedural posture of the case must be in order to compel an examination. As evidence of the breadth of the statute, the legislature specifically authorizes the court to also order a competency examination even after a jury has been impaneled. § 19-2-1302(3) (stating that the court has the discretion to order a mistrial if it decides to "order[] the juvenile referred for a competency examination"). In other words, a juvenile who was found competent earlier in the proceedings could again have his current competency called into question. If the court decides it does not have enough information at that point in time, then it must order a competency examination. That is the practical effect of the word "whenever" in the statute.

¶40 Not only is this the plain language of the statute, but it also makes sense. Competency is a fluid concept. It can change. For instance, a juvenile who stops taking psychotropic medication may quickly deteriorate, calling his competency into question. The court needs adequate information about the juvenile's competency at that time, regardless of previous examinations.

¶41    As another example, a juvenile who was previously found to be incompetent due to his young age or intellectual challenges, but has since been taught about the criminal justice system and the various roles people have in it, may now be ready to assist his lawyer and understand his rights. Again, the court needs adequate information about the juvenile's competency. Here too, the court may order a competency examination.

¶42    These two examples demonstrate why the word "whenever" is critical to the proper reading of the statute. It gives the appropriate breadth to its plain language. This broad discretion makes sense because the question of a juvenile's competency can arise at any point in a case. Yet the majority concludes that the plain language of section 19-2-1302(1) is "narrower in scope." Maj. op. ¶ 26.

¶43    Indeed, the majority instead focuses on the restoration hearing statute, section 19-2-1304(1), C.R.S. (2019), as the sole mechanism for determining whether a juvenile is competent in situations such as these, where the court has already found him to be incompetent to proceed. I agree that a hearing should be held under section 19-2-1304(1). The issue I take with the majority's reasoning is that it treats sections 19-2-1302(1) and 19-2-1304(1) as mutually exclusive. A plain reading of the statutes illustrates that this just isn't so.

¶44    We cannot consider sections 19-2-1302(1) and 19-2-1304(1) in isolation. Courts must construe a statute within the broader context of the entire statutory

4

scheme, "giv[ing] consistent, harmonious, and sensible effect to all parts." *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011). Section 19-2-1304(1) provides similarly broad language when it gives the court the discretion to order a hearing at *any* time:

> The court may order a restoration to competency hearing, as defined in section 19-2-103(14.3), at any time on its own motion, on motion of the prosecuting attorney, or on motion of the juvenile. The court shall order a restoration of competency hearing if a competency evaluator with the qualifications described in section 19-2-1302(4)(b) files a report certifying that the juvenile is competent to proceed.

In effect, the restoration statute provides the court with discretion to order a restoration hearing if it so chooses or at the parties' request. As the statute indicates, the hearing must conform with section 19-2-103(14.3), C.R.S. (2019), which defines a "restoration to competency hearing" as "a hearing to determine whether a juvenile who has been previously determined to be incompetent to proceed has achieved or is restored to competency." These statutes do not preclude the court from ordering a second competency hearing under section 19-2-1302(1). To be sure, what is most notably absent from these statutes is any mention of the procedure the court should follow if it lacks adequate information to make a determination of competency at the restoration hearing. In my view, this is intentional. The legislature did not need to reiterate that the court has the authority to order an additional competency examination. Section 19-2-1302(1)

5

already does just that. It explicitly authorizes the court to order an examination *whenever* it finds it is necessary. It would therefore be repetitive for the legislature to provide this authority again in the restoration hearing statute.

¶45    I also take issue with the majority's conclusion that section 19-2-1302(1) is "narrower in scope." Maj. op. ¶ 26. The majority claims that the provision authorizes a court to order an examination when it lacks the requisite information to "make *a preliminary finding* that the juvenile is or is not competent to proceed." *Id.* (quoting § 19-2-1302(1)). In doing so, the majority narrows the scope of the restoration hearing statute by holding that section 19-2-1302(1) "applies only when a juvenile's competency is *initially* questioned." *Id.* In my view, this interpretation is misguided. The phrase "preliminary finding" does not mean when a juvenile's competency is "initially questioned." Instead, "preliminary finding" means prior to the *court's* final determination of whether a juvenile is competent to proceed. This can occur at any point in the delinquency proceeding. But under the majority's formulation, if a juvenile's competency is reasonably questioned more than once during the course of an adjudication proceeding, then the trial court may only order a competency examination in the first instance, regardless of the information—or lack of information—it has to make a subsequent determination. This reading puts the trial judge in a very difficult position.

6

¶46    Under a common-sense reading, the phrase "preliminary finding" refers to the court's temporary determination of competency and not to the point at which the issue of competency is raised. Thus, a more natural reading of section 19-2-1302(1) makes it evident that the legislature intended to provide the court with the authority to order an additional competency examination before it makes its final determination on the matter.

¶47    This is so because competency is a fluid concept; it is not immutable, nor is it static. In fact, "a final determination of competence" only refers to a point in time. And the General Assembly clearly recognized this when drafting the juvenile competency statutes. Not only did the legislature provide procedures for restoring a juvenile to competency, it also mandated that the court review the juvenile's progress toward competency every ninety days. § 19-2-1303(2), C.R.S. (2019). This suggests that the General Assembly not only intended to provide juveniles deemed incompetent to proceed with the necessary services to restore them to competency, but also to recommence the delinquency proceedings in a timely fashion. However, under the majority's narrow interpretation of section 19-2-1302(1), a court cannot ensure that the legislature's intent is fulfilled when it lacks the requisite information to deem a juvenile competent. I fear that the majority's interpretation will inevitably lead to illogical results because the court may never have sufficient information to determine a juvenile's competency.

7

¶48 I do agree with the majority that the legislature contemplated that the Office of Behavioral Health ("OBH") would testify about a juvenile's progress toward competency at the restoration hearing. Unfortunately, OBH refuses to opine about the juvenile's competency due to a claim of conflict of interest. Under the majority's interpretation, I am concerned that the trial court is forced to shrug its shoulders because it lacks sufficient information to determine whether a juvenile has been restored to competency. The majority's holding essentially divests the trial court of its authority to make a determination at the restoration hearing by disallowing it to order an additional competency examination. To be sure, the statute provides that OBH is solely responsible for overseeing restoration or coordinating the necessary restoration services. § 19-2-1303(2). The majority's holding necessarily means that only OBH, or an outside provider selected by OBH to provide restoration services, will be in a position to control the answer to the question of whether a juvenile has been restored to competency. The trial court should not be constrained to rely exclusively on the word of OBH or OBH's chosen proxy. Instead, it should have the discretion—and indeed *does* have the discretion under section 19-2-1302(1)—to order an additional competency examination "whenever" it sees fit. In my view, the majority's holding frustrates the General Assembly's intent.

8

¶49 In sum, I agree with the majority that a restoration hearing must be held for the court to make a determination of the juvenile's competency. But where I part ways with the majority is in what evidence will be available for the court to make such a determination. Under circumstances such as these where OBH refuses to opine and a current competency examination cannot be ordered, how can the court determine if the juvenile has been restored to competency? I fear the court will be left to speculate. And that is not in the juvenile's best interest.

¶50 I would therefore affirm the court's decision below.[7] Accordingly, I respectfully dissent.

I am authorized to state that JUSTICE HART joins in this dissent.

---

[7] The juvenile in this case also contends that compelling him to undergo another competency evaluation would violate his Fifth Amendment right against self-incrimination, which the majority understandably declines to address. The legislature has specifically mandated that evidence obtained during competency evaluations are inadmissible "on the issues raised by a plea of not guilty." § 19-2-1305(3), C.R.S. (2019).