**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 30, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

EL DUENO, LLC,

      Plaintiff - Appellant,

v.

MID-CENTURY INSURANCE
COMPANY,

      Defendant - Appellee.

No. 24-1110
(D.C. No. 1:21-CV-01532-DDD-JPO)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

Colorado provides a statutory remedy for insurance policy holders when insurers unreasonably delay or deny coverage. Under Colorado law, an insurer's delay or claim denial is unreasonable if it does either without a reasonable basis. We decide whether Defendant Mid-Century Insurance Company had a reasonable basis for refusing coverage for Plaintiff El Dueno's roof repairs. The district court granted Defendant summary judgment, holding that Plaintiff failed to show that Defendant acted unreasonably or violated industry standards by relying on a particular expert report. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Plaintiff owns a commercial building in Greeley, Colorado. Plaintiff's Defendant-issued insurance policy on the building included coverage for direct physical loss caused by hail. On April 2, 2019, Plaintiff submitted a claim to Defendant for roof damage sustained by a hailstorm from the previous July. Defendant assigned claim adjuster, Maggie Fields, to investigate Plaintiff's roof. Fields found hail damage to the roof and estimated around $22,000 of damage. After applying depreciation and the policy's deductible, Fields authorized, and Defendant paid, about $12,000.

Plaintiff then hired a contractor to repair the roof, and that contractor estimated that repairing the roof and bringing it to code would cost $343,000. Plaintiff submitted this updated estimate to Defendant, and Defendant reassigned Plaintiff's claim to large-loss adjuster Patrick McCourt. McCourt reinspected the property and hired Rimkus Engineering to determine whether hail damaged the roof. McCourt also hired an HVAC consultant, HVACi, to assess the roof's HVAC units.

HVACi determined that hail damaged several rooftop HVAC units and prepared a repair estimate of $8,134.31. McCourt added HVACi's estimates to Fields's to update the repair estimate to $28,909.43. Defendant then sent Plaintiff another payment for rooftop HVAC repair.

2

Rimkus engineer William Templeton inspected the roof on December 12, 2019—a day where ice and snow covered portions of the roof.[1]



Templeton concluded that hail did not damage the roof and that any damage to the roof was preexisting or came from other causes. After receiving Templeton's report, Defendant notified Plaintiff that its policy did not cover the roof repairs, but that it would not seek to recoup the previously disbursed payments.

---

[1] Plaintiff's brief describes the roof as snow-covered to a degree that, in and of itself, created a fact issue as to whether Templeton could have conducted a competent inspection. But the record contradicts that assertion and shows the roof largely devoid of snow at the time of the inspection.

In April 2021, Plaintiff sued Defendant in Colorado state court. Defendant removed to federal district court, and Plaintiff amended its complaint to assert a single claim for unreasonable delay or denial of covered benefits under Colo. Rev. Stat. § 10-3-1115. During litigation, Defendant retained another engineer, John Peterson, to inspect the roof and review Templeton's report. Peterson agreed with Templeton that hail did not damage the roof and its tiles. Plaintiff's expert Kerry Freeman, by contrast, found hail damaged the roof and questioned whether Templeton could see enough of the roof given the patches of snow and ice still present during his investigation.

Defendant moved for summary judgment, asserting that Plaintiff could not establish that it refused coverage without a reasonable basis. The district court granted Defendant's motion. Plaintiff appeals.

## II.

Under Colorado law, insurers cannot "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). A first-party claimant is "an individual . . . asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." § 10-3-1115(b)(I). An insurance company's delay or denial is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." § 10-3-1115(2). If first-party claimants believe their insurers unreasonably delayed or denied payment, they "may bring an action in

4

a district court to recover reasonable attorney fees and court costs and two times the covered benefit." § 10-3-1116(1).

As a first-party claimant, Plaintiff asserts a claim under § 10-3-1115, 1116, arguing that Defendant denied it payment without a reasonable basis. Plaintiff argues on appeal that the district court erred in granting Defendant summary judgment because its ruling "rests on [the] flawed premise" that an insurance company's reliance on a single engineering report, "regardless of its flaws and conflicting evidence," "automatically excuses the insurer's allegedly unreasonable conduct." Plaintiff urges us to reject that holding because it "would upend the very protections at the heart of Colorado's statutory insurance scheme."

We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court. Dyno Nobel v. Steadfast Ins. Co., 85 F.4th 1018, 1024–25 (10th Cir. 2023) (quoting Gutierrez v. Cobos, 841 F.3d 895, 900 (10th Cir. 2016)). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if it affects the suit's outcome, and a dispute is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." Allen v. Muskogee, 119 F.3d 837, 839 (10th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). We construe the facts and all reasonable inferences from the facts in the light most favorable to the nonmovant. Id. at 839–40 (citing Gullickson v. Southwest Airlines Pilots' Assoc., 87 F.3d 1176, 1183 (10th Cir. 1996)).

To prevail against an insurer for an unreasonable payment denial or delay—a "bad-faith claim"—plaintiffs "must establish that the insurer acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim." Schultz v. GEICO Cas. Co., 429 P.3d 844, 847 (quoting Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1274 (Colo. 1985)). To make this determination, we consider the reasonableness of the insurer's conduct objectively, "based on proof of industry standards." Id. (quoting Goodson v. Am. Standard Ins. Co., 89 P.3d 409, 415 (Colo. 2004)). Courts may require expert testimony to establish industry standards "when the standard is not within the common knowledge of ordinary people." Am. Fam. Mut. Ins. Co. v. Allen, 102 P.3d 333, 343 (Colo. 2004) (citing Goodson, 89 P.3d at 415). An insurer's decision to deny benefits "must be evaluated based on the information before the insurer at the time of that decision." Schultz, 429 P.3d at 847 (quoting State Farm Mut. Auto. Ins. Co. v. Reyher, 266 P.3d 383, 390 (Colo. 2011)).

When Defendant determined that its policy did not cover Plaintiff's roof repairs, Defendant had before it Fields' report concluding hail damaged the roof and Templeton's report concluding hail did not damage the roof.[2] Plaintiff argues that the conflicting information before Defendant and the methodological flaws in Templeton's report demonstrate Defendant acted unreasonably in denying it

---

[2] The parties sought the other two reports discussed above, produced by Freeman and Peterson, during litigation. Those reports were not available to Defendant when it denied Plaintiff coverage.

6

coverage. Plaintiff also contends that the conflicting reports and Templeton's errors demonstrate a genuine dispute of material fact, making summary judgment inappropriate.

We disagree and conclude that Plaintiff failed to show Defendant lacked a reasonable basis to deny coverage under § 10-3-1115 and § 10-3-1116. Perhaps the most glaring issue with Plaintiff's argument concerns the relevant industry standard. Industry standards determine whether an insurer's actions were reasonable. Schultz, 429 P.3d at 847. As stated above, expert witnesses often help establish industry standards, but they are not required when "the reasonable investigation and denial of an insured's claim is within the common knowledge and experience of ordinary people." Allen, 102 P.3d at 344 (citing Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 931 (Colo. 1997)). Plaintiff asserts that the industry standard in this case is "within the grasp of ordinary people using common sense." Plaintiff might well be correct that it does not "take an expert to recognize that a roof partially covered in snow might conceal hail damage." But Plaintiff never articulates any industry standard. Read generously, Plaintiff's brief suggests that Defendant was unreasonable for relying on Templeton's report and investigation conducted when small patches of snow and ice dotted the roof.[3] This is not an articulated industry

---

[3] Plaintiff argues that "[c]ase law also serves as a potential source of industry standards," [Opening Br. at 18 (citing Meiman v. Am. Fam. Mut. Ins. Co., 2022 WL 7560293, at *10 (D. Colo. Oct. 13, 2022)),] and lists "industry standards" such as "conducting a full, fair, and prompt investigation of the claim; objectively evaluating claims based on all available evidence, not just evidence that supports the insurer's position; and thoroughly examining and questioning reports from consultants to

standard, however, and without one with which to compare Defendant's conduct, we cannot conclude Defendant acted unreasonably in denying coverage. See Sandoval v. Unum Life Ins. Co. of Am., 952 F.3d 1233, 1239 (10th Cir. Mar. 17, 2020) (stating that under Colorado law, "[i]ndustry standards supply the guidepost to assess the reasonableness of the insurer's conduct.").

To the extent that Plaintiff argues that Defendant unreasonably relied on Templeton's report because he generated it after Fields generated her report, Plaintiff still fails. Plaintiff presents no evidence of an industry standard that suggests insurers act unreasonably when they rely on a later-generated report. In fact, courts have reached the opposite conclusion, holding that an insurance company does not act unreasonably in determining the scope and value of a claim by relying on a report generated by an independent engineer, even if that report conflicts with an insurance adjuster's initial assessment. See Musel Master, LLC v. Am. Fam. Mut. Ins. Co., 2019 WL 9244886, at *3 (D. Colo. June 24, 2019) (dismissing the insured's bad-faith claim because it did not provide evidence that the insurer's reliance on a later-generated report was inconsistent with industry standards); Bell Advisors, LLC v. Am. Fam. Mut. Ins. Co., No. 16CA2081 (Colo. App. Jan. 25, 2018), cert. denied, No.

---

ensure they contain all necessary opinions to properly evaluate the claim" as well as "not . . . ignor[ing] conflicting evidence." Even assuming these are applicable industry standards, Plaintiff doesn't discuss, beyond conclusory statements, how Defendant's investigation of its claim or its decision to deny coverage fails to meet these standards. If there was another industry standard—such as one requiring investigations only when snow and ice are completely melted—Plaintiff does not discuss or provide evidence of such a standard.

18SC136, 2018 WL 4204180 (Colo. Sept. 4, 2018) (unpublished) (holding that an insurance company was not unreasonable in relying on an independent engineering report in determining a roof's hail damage even if it conflicted with estimates calculated by the insured's contractor). Without evidence of an industry standard suggesting that Defendant acted unreasonably in relying on Templeton's later-generated report, Plaintiff's arguments only show disagreement with Templeton's findings.

As a general matter, disagreements between an insurance company's expert and a plaintiff's expert do not necessarily suggest that the investigation or claim denial was unreasonable. See Sandoval, 952 F.3d at 1237–38; Avalon Condo. Ass'n v. Secura Ins., 2015 U.S. Dist. LEXIS 129373, at *17 (D. Colo. Sept. 25, 2015) ("Although Plaintiff disagrees with [the insurer expert's] findings, mere disagreement of this sort is insufficient for Plaintiff to sustain its bad faith claim.") (citing Packer v. Travelers Indem. Co., 881 S.W.2d 172, 176 (Tex. App. 1994)). Colorado permits bad-faith claims only when insurers "*unreasonably* delay or deny payment of a claim for benefits owed." Colo. Rev. Stat. § 10-3-1115(1) (emphasis added). So even if Templeton's report was wrong about the lack of hail damage, to have an actionable claim under § 10-3-1115 and 1116 Plaintiff must show that Defendant not only wrongly but also unreasonably relied on Templeton's report.[4] Mere disagreement is

---

[4] We also note that the district court found that Templeton "was a qualified engineer," whereas Fields "was not an engineer and had less experience inspecting roofs and assessing hail damage." Plaintiff has not shown that Defendant's reliance

not enough for a claim under Colorado law, and because Plaintiff fails to articulate an industry standard, it has shown no more than mere disagreement.

Plaintiff has also not demonstrated any genuine issues of material fact that would preclude summary judgment.  To the extent Plaintiff argues that conflicting reports create a factual dispute, Plaintiff misses the mark.  Plaintiff bases its claim on Defendant's bad faith—not whether hail actually damaged the roof.  And to the extent Plaintiff argues that a factual dispute exists as to whether Defendant reasonably relied on one report over a conflicting one, its argument fails for the reasons discussed above.  Without evidence of an industry standard with which to compare Defendant's conduct, no factual dispute exists for a jury to resolve.  Thus, the district court did not err in granting Defendant summary judgment.

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

on a report generated by a more experienced inspector was unreasonable or violated industry standards.